### BATES & CO. v. COBB.

1. A purchase of land, with his own money, in the name of another, by a party not indebted, is fraudulent and void as to subsequent creditors, where the transfer was intended to secure the property against ventures in which the purchaser was about to embark; and also where the deed was withheld from record, and the real purchaser retained the possession, leased the premises, used the rent, and returned it for taxation in his own name, and got credit from his supposed ownership, the grantee not objecting.

2. A deed of land to A, (who paid the purchase money) "for B," (his sister), is void as to subsequent creditors of A, the deed not being recorded or known to the creditors, and A being the ostensible owner of the premises.

3. The satisfaction of a prior mortgage on this land being part of the consideration paid by A, an assignment of this mortgage to "A for B to better protect his title to said property," could not operate to benefit A, for the deed was made for the use of B; and could not operate to benefit B, because of the fraud as to the creditors of A.

4. Where judgments are obtained against only one member of a firm on partnership debts, and *nulla bona* is returned, legal remedies are exhausted as to him, and the aid of equity may be invoked to reach property fraudulently disposed of by him, without first proceeding at law against the other partners.

5. Petition for rehearing refused.

Before NORTON, J., Abbeville, February, 1888.

This was an action by Edwin Bates & Co., and H. D. A. Bieman, against Charles A. Cobb and Emma T. Turner. The Circuit decree, after stating the nature of the action, proceeded as follows:

The master found that the consideration of the said deed was paid by C. A. Cobb out of his own funds; that the deed was never recorded, and that the said property thus conveyed was used and represented publicly by C. A. Cobb as his own; that his creditors have been led by such representations and public records to believe that it was the property of said C. A. Cobb, and on the strength of such belief, have extended him credit.

It appears from the testimony that on August 11, 1883, C. A. Cobb purchased from J. C. Maxwell the property above referred

to for the sum of $2,500,.and paid for it with his own money. This is admitted by the defendants, and that the title was made by the direction of C. A. Cobb to himself, for Emma T. Cobb (now Turner), his sister. The testimony further shows that C. A. Cobb entered into the mercantile business as a partner in two firms at Hodges, S. C., in the fall of 1883, the firms Cobb & Richey, and Cobb & McHugh, and that about the same time he became a partner with his brother, at Bradley, S. C. The debt due Edwin Bates & Co. was contracted on September 23, 1884, and that due H. D. A. Bieman was made in November, 1885, the former by Cobb & Richey, and the latter by·Cobb & McHugh. Suit was brought on these debts, and judgments recovered against C. A. Cobb in this court in June, 1886. Executions were issued and returned *nulla bona*.

I conclude that the intention of Charles A. Cobb, at the time the deed was made by Dr. Maxwell to him for Mrs. Emma T. Turner, *née* Cobb, was to quietly and as secretly as possible put the property in her hands to be returned to him if the business and sporting ventures upon which he was about to enter should prove successful; but if these ventures should prove unsuccessful, then to be held by her against the claims of such creditors as might exist at the collapse thereof, and that in either event, and pending the result, he should have the management and benefit of the property, and that Mrs. Turner, then Miss Cobb, was cognizant of and fully concurred in such intention. All their acts are consistent with this conclusion, and many of them are inconsistent with any other. Cobb says he was a· sporting man and might lose the property, evincing the idea of providing for future contingencies. He was about to venture into two or three mercantile partnerships, to be managed by others, quite as uncertain as gambling, yet he was accustomed to take chances, and he would take these. Would it not be as necessary to provide against such risks as against sporting ?

The debts which Mr. Richey says Cobb owed while goods were being bought for Cobb & Richey, may have existed prior to the deed, and might have been the dregs of some previous mercantile business. It was necessary that there should be two witnesses to the deed, the grantor desired the money to be applied

to the payment of a mortgage debt thereon, and the insurance company required the policy to correspond with the legal title. And these are the only persons who appear to have known of the deed from Dr. Maxwell to C. A. Cobb for Emma Cobb. The deed was not recorded. The property was returned for taxation in C. A. Cobb's name. He mortgaged it in his own name, which appeared on the record. Cobb rented the property and managed it as his own. No tenant, except one who happened to witness the deed, knew of Mrs. Turner's claim. Why the inquiry of Dr. Maxwell if the property might be returned in his, Cobb's, name ? Why not return it in his sister's name, unless to hold out to the world that it was his ? Why inquire of Dr. Maxwell, unless by accident, or that such inquiry might not extend the knowledge of Miss Cobb's deed ? She was his favorite sister. On whom could he more safely depend to re-convey ? And has she not justified his confidence ? She permits him to manage the property as his own, she does not exact rents, what he gives, she takes, she permits him to mortgage it in his own name. Why give this permission, instead of herself executing the mortgage as collateral ? Why except to hold out Cobb as owner ?

If Capt. Godsey had known of this title in her, would he not have exacted from her something more than a verbal permission to her brother to mortgage ? As the ventures have proven unsuccessful, she sets up her title now vigorously. While the result was in doubt, he managed the property as his own, received the rents and appropriated the bulk of them to his own use, giving only so much thereof as he pleased to Mrs. Turner, and she does not even now pretend to demand them. In my opinion, the fact that it appeared by the records in the register of mesne conveyance's office that Dr. Maxwell owned the property and that his mortgage thereon remained unsatisfied do not weaken the force of these facts. This is not a contest with Dr. Maxwell's creditors, and he was probably good for his debts. Inquiry by these plaintiffs of J. K. Durst, the tenant, would have fully developed C. A. Cobb's claim. This is the converse of *Biemann* v. *White*, 23 S. C., 490. Plaintiffs are presumed to have given credit on the faith that Cobb was the owner of the property, as evidenced by records and his apparent ownership thereof.

The assignment of the mortgage must follow the disposition of the deed of conveyance. It was a part of the same transaction. As Cobb never had title, this action is properly brought.

The proof of insolvency has been sufficiently made.

I am satisfied, therefore, with the findings of fact by the master in this case.

It is ordered, that the exceptions thereto be overruled.

The defendants appealed on the following grounds :

I. Because it was error in his honor, the presiding judge, not to hold that the complaint did not state facts sufficient to constitute a cause of action.

II. Because his honor erred in holding that a deed of land could be set aside at the suit of subsequent creditors, when there were no creditors existing at the date of the deed.

III. Because his honor erred in finding as a matter of fact that C. A. Cobb held the property out to the world as his own.

IV. Because his honor erred in finding that the creditors of C. A. Cobb were misled by this fact to extend credit to him.

V. Because his honor erred in finding that the plaintiffs are presumed to have extended him credit upon the faith of the property.

VI. Because his honor erred in finding that C. A. Cobb procured the deed of the property in dispute to be made by Dr. Maxwell to Mrs. Emma T. Turner for the purpose of defrauding his creditors, when the proof shows that he did not owe a dollar at the time of the conveyance, and for more than one year thereafter.

VII. Because his honor erred in finding that Mrs. Turner knew of and concurred in the fraudulent intent of C. A. Cobb.

VIII. Because his honor erred in finding that the public records gave notice that the brick store was the property of C. A. Cobb.

IX. Because his honor erred in setting aside the mortgage executed by Dr. Maxwell to C. H. Judson, and assigned by C. H. Judson to Mrs. Emma T. Turner, when said mortgage was not attacked in the complaint, and not set aside by the master, and was not involved in the pleadings in the case.

X. Because his honor erred in holding that said mortgage was fraudulent and void, when no such finding was made by the master, and his report was not excepted to by plaintiffs.

XI. Because his honor erred in ordering a sale of said land.

XII. Because it was error in his honor to find that C. A. Cobb and Mrs. Turner intended fraud at the time of the execution of the deed, when the master did not so find, and the plaintiffs did not except to his report.

XIII. Because his honor erred in setting aside the deed at the suit of subsequent creditors, when there was no finding by the master that it was executed as a cover for future fraud, and no exceptions by plaintiffs to said report.

XIV. Because it was error in his honor to order that the property be sold, and after paying the judgments of the plaintiffs, the master to hold the balance, even if his honor was correct in all his conclusions of law and fact; this not being a creditors' bill, Mrs. Turner is entitled to the balance of the proceeds of sale after payment of the claims of the plaintiffs and the costs of the action.

XV. Because it was error in his honor to assume that credit was extended to C. A. Cobb upon the faith of this property, when there was not a particle of proof that such was the fact.

XVI. Because it was error in his honor to overrule the defendants' exceptions to the master's report, which exceptions were as follows: 1. Because the master erred in finding as matters of fact: (1) That the consideration of the deed of conveyance from J. C. Maxwell to C. A. Cobb for Emma T. Cobb was paid by C. A. Cobb out of his own funds. (2) That said deed has never been recorded. (3) That the property conveyed by said deed has been used and represented by C. A. Cobb as his own. (4) That creditors have been led by such representations and by the public records to believe that said property was the property of C. A. Cobb, and on the strength of such belief have extended him credit. 2. Because the master erred in finding as conclusions of law: (1) That said property is the property of C. A. Cobb. (2) That it is subject to the payment of his debts. (3) That the plaintiffs are entitled to the relief prayed for in the complaint.

XVII. Because it was error in his honor to find facts not

found by the master, and upon those facts thus found by him, to base his decree in this case, when the master's report was not excepted to by the plaintiffs.

XVIII. Because the conclusions of law by the master did not follow the facts found by him, as is shown by the decree of the presiding judge, and it was error in his honor not to overrule the master's report.

XIX. Because it was error in his honor not to hold that the testimony of W. O. Bradley was incompetent as against the defendant, Mrs. Turner.

XX. Because it was error in his honor to hold that the action could be maintained, when the evidence showed that the plaintiffs had not exhausted their remedy at law.

XXI. Because neither the master nor the Circuit Judge found as matter of fact that the plaintiffs extended credit to C. A. Cobb upon the faith of this property, which finding was necessary to support the finding of law that the property was liable to the plaintiffs who claim as subsequent creditors of C. A. Cobb.

XXII. Because it was error in his honor not to hold that the plaintiffs had notice of the mortgage executed by J. C. Maxwell to C. H. Judson and assigned to Mrs. Turner, and that any rights they may have were subject to said mortgage.

XXIII. Because said decree is in all respects contrary to the law and the evidence.

*Messrs. Graydon & Graydon* and *J. T. Johnson*, for appellants.

*Messrs. Benet & Cason* and *DeBruhl & Bradley*, contra.

October 12, 1888. The opinion of the court was delivered by Mr. Justice McGowan. The plaintiffs severally recovered judgments against the defendant, C. A. Cobb, at the June term of the court at Abbeville (1886), the first named for $426, on a debt contracted in September, 1884, by Cobb & Richey, the senior member being C. A. Cobb, and the latter (Bieman) for $205.05, on a debt contracted in November, 1885, by Cobb & McHugh,

the senior member of this firm also being the said C. A. Cobb. Executions were issued and returned by the sheriff *nulla bona.*

This action was then brought by the judgment creditors, to set aside and have declared void, as against his creditors, a deed of gift of a certain store house and lot in the town of Greenwood, claimed to have been made by the said C. A. Cobb to his sister, Emma T. Cobb (now Turner), on August 11, 1883. The complaint alleged that the said Cobb purchased the said house and lot from Dr. Maxwell, paid for the same with his own money, and had the titles made to himself "for Emma T. Cobb," with intent to hinder, delay, and defraud the plaintiffs in the collection of their debts; that the deed was never recorded, but that the said C. A. Cobb held the property out to the world as his own, returned it for taxation in his own name, and used it in all respects as his own, and received credit on the faith of the property; and prayed that the store house and lot be adjudged to be the property of the defendant, Cobb, and subject to the payment of his debts; and that the declaration in favor of the defendant, Emma T. Turner, be declared void as to the creditors of the said Charles A. Cobb, and for general relief. The defendants pleaded a general denial as to the alleged fraud in the declaration in favor of the sister, Emma T. Cobb.

It appeared that Dr. John C. Maxwell had previously given a mortgage of the house and lot to Professor Judson, treasurer of Furman University, to secure a debt; that Maxwell, the mortgagor, negotiated a sale of it for $2,500 to C. A. Cobb, who paid the mortgage debt and a balance to Dr. Maxwell, who, by the direction of Cobb, made a conveyance "to C. A. Cobb for Miss Emma T. Cobb." There was on the mortgage a receipt for the money, and an endorsement by treasurer Judson, purporting to assign it to C. A. Cobb "for Miss Emma T. Cobb." There was testimony as to the relations between C. A. Cobb and his sister, and as to their conduct in regard to the house and lot. The master found as follows: "It is admitted that the money paid by C. A. Cobb was his own funds. The deed was never recorded. Charles A. Cobb has had control and management of the property so conveyed, has rented it and collected the rents, receipting for the same, and has paid over small portions of the rent to his sis-

ter, retaining the balance for his own use, and has returned the property for taxation in his own name. About the time the foregoing deed was executed, and for some two years afterwards, C. A. Cobb was in business at Hodges, in this county, as a member of the two firms of Cobb & Richey and Cobb & McHugh, and the testimony is that credit was extended to him on the strength of his reputed ownership of said property. * * * I do not think that there can be any question of plaintiffs' right to have their claims satisfied out of this property, * * * and find as matter of fact, that said deed has never been recorded; that the property has been used and represented publicly by C. A. Cobb as his own; and that creditors have been led by such representations and by the public records to believe that said property was the property of C. A. Cobb, and on the strength of such belief have extended him credit," &c.

Upon exceptions to this report, the cause came on to be heard by Judge Norton, who declared that he was satisfied with the findings of fact by the master; and held, substantially, that, from the evidence, there never was a *bona fide irrevocable* gift of the house and lot to the sister, but that from the beginning the alleged gift was merely pretensive and fraudulent, to be set up or not, as circumstances might require. The judge said: "I conclude that the intention of Charles A. Cobb, at the time the deed was made by Dr. Maxwell to him "for Mrs. Emma T. Turner" (*née* Cobb), was to quietly and as secretly as possible put the property in her hands, to be returned to him if the business and sporting ventures upon which he was about to enter should prove successful; but if these ventures should prove unsuccessful, then to be held by her against the claims of such creditors as might exist at the collapse thereof; and that in either event, and pending the result, he should have the management and benefit of the property, and that Mrs. Turner (then Miss Cobb) was cognizant of, and fully concurred in, such intention. All their acts are consistent with this conclusion, and many of them are inconsistent with any other. Cobb says he was a sporting man, and might lose the property, evincing the idea of providing for future contingencies," &c. Thus holding, he granted the relief prayed for by the plaintiffs,

and declared the lot subject to the payment of C. A. Cobb's debts, and the defendants appeal to this court.

The exceptions are numerous (23· in number), and being printed in the Brief, need not be set out here. As stated at the bar, we think they may be condensed into the following propositions: 1. That subsequent creditors cannot attack a deed for fraud, or ask that it be set aside as to them. 2. That there was no proof of fraud originally on the part of C. A. Cobb or Mrs. Turner, and in that respect the Circuit Judge erred. 3. That C. A. Cobb did not hold out the property as his own, and did not receive credit on the faith of it. 4. That the plaintiffs have not exhausted their remedy at law.

It is certainly settled that a voluntary conveyance by a debtor is void as against his subsisting creditors, upon the principle that a man must be just before he is generous. But it by no means follows that all voluntary conveyances are good as against subsequent creditors. It is not quite certain that in this case there were no existing creditors of C. A. Cobb at the time the deed in question was executed by him, or had it executed by Dr. Maxwell. The judge states "that the debts which Richey says Cobb owed when goods were being bought for Cobb & Richey, may have existed prior to the deed, and might have been the dregs of some previous mercantile business." But passing that, and assuming that Cobb was not indebted to any considerable extent at the time of the execution of the alleged deed of gift (1883), how does the matter stand? The principle applicable in such cases is carefully stated by the Chief Justice in the case of *Walker, Evans & Cogswell* v. *Bollmann Brothers*, 22 S. C., 512: "Before a subsequent creditor can attack a settlement or transfer of a party made when not indebted, he must show that the same was voluntary, and was made with reference to future indebtedness, or prove circumstances of fraud other than what arises from its being voluntary," &c.

Apply this test. There is no doubt that the declaration here was voluntary; and his honor, the presiding judge, found that there were circumstances connected with the deed and the conduct of the parties which showed clearly that the deed was never intended to be a *bona fide irrevocable* transfer of the property to

the sister, but from the beginning was *pretensive*, and merely intended to cover and secure the property in any event that might happen. Is that finding contrary to the manifest weight of the testimony? If not, this court, under the authority of many decisions, must let it stand. We have examined the testimony carefully, and, without undertaking to restate it, we must say it seems to us that the weight of the testimony is not against the finding so as to authorize us to reverse it. But, on the contrary, there is evidence, afforded by a number of circumstances, to sustain it. "The intent may be collected from the circumstances of the case, and such badges of fraud as the transaction wears. Some of the usual badges are the omission to record the conveyance, possession of the property and obtaining false credit thereby, * * * the magnitude of the conveyance compared with the grantor's means; the concealment or notoriety of the transfer; * * * the immediate engagement in a hazardous business, and the contracting of debts immediately after the transfer," &c. *Bump on Fraudulent Conveyances*, 309, and see *Iley* v. *Niswanger*, 1 McCord Ch., 523.

But if, by possibility, this may be a mistake, there can be no doubt whatever of the following facts found by the master and concurred in by the judge: that the deed was withheld from the registry; that notwithstanding the words in the deed, "for Miss Emma T. Cobb," C. A. Cobb retained the possession, leased the premises, and used the rent as his own, without objection on the part of his sister, the alleged donee, who testified that she "allowed Charley to use it as his own, so he did not run any risk with it;" Cobb mortgaged the lot in his own name—returned it for taxation in his own name. The only record which could have shown Mrs. Turner's interest was withheld from public inspection, and every act touching the property after it passed from Dr. Maxwell's ownership, from which creditors and the public could draw inferences as to the ownership, was, whether intentionally or not, calculated to induce the belief that it was C. A. Cobb's property. The testimony shows that creditors were led to so believe, and on that belief extended him credit.

In the case of *Brock* v. *Bowman* (Rich. Eq. Cas., 189), Judge O'Neall, in delivering the judgment of the court, said: "If a

debtor gives away property, and still retains the actual posses-
sion, the creditor has the right to suppose that all the property
in his possession is liable to his debts, and, therefore, his rights
cannot be affected by a gift, of which he is not bound to take
notice.   As to gifts consummated by the transfer of actual pos-
session, subsequent creditors cannot, of course, complain; for
they do not trust the debtor on the faith of property not in his
possession.   But if, after having made a gift, the donor retains
possession, it is, as to subsequent creditors without actual or con-
structive notice (by recording, when done in conformity to law),
absolutely void.   *Cordery* v. *Zealy*, 2 Bail., 205.   For they are
legally presumed to give credit on the faith of the property in
their debtor's possession.   These legal rules and their exceptions
I have stated with more than ordinary care, so that the complaint
may not be again made, that the law is unsettled.   They are
rules to which all decisions must conform as settled law," &c.

It is said, however, that this was in reference to personal pro-
perty, as to which possession is *prima facie* evidence of owner-
ship, but that such is not the case as to land.   It may be true
that the mere possession of land is not generally as strong evi-
dence of ownership as that of personalty ; but that is for the rea-
son that, so far as the public is concerned, the real ownership of
land is assumed to be shown *by the record*, required by law to be
made for the express purpose of giving notice to all concerned.
Where there is the possession and use of land as owner—so held
out to the world—and there is no registry which explains the
fact, we are unable to see why the same principle should not
apply.   The rule is based on the abhorrence of the law for covert
and fraudulent dealing, which may as well occur in reference to
one kind of property as another.   See *Bump Fraud. Conv.*, 48.

The conveyance of Dr. Maxwell to C. A. Cobb was for valu-
able consideration, and, as to the creditors of Cobb, must stand.
But the superadded supplemental words, "for Miss Emma T.
Cobb," must be considered as an attempt on his part to make a
separate and distinct deed of gift to her.   The view is, that this
effort to cover the property was kept secret and never recorded,
and therefore, as to subsequent creditors without notice, who
trusted him on the faith of his ownership, is void.   "If a convey-

ance is merely colorable, and a secret trust and confidence exist for the benefit of the grantor, it is void not only against precedent, but subsequent creditors, for it is in such a case a continuing fraud, and may actually operate as such as well in reference to debts contracted after as before the conveyance. Property conveyed in trust is still the property of the grantor for every beneficial purpose, and the secret trust in a conveyance tainted with actual fraud renders the property liable to subsequent creditors. * * * The purpose or effect of a conveyance must, in general, be to injure subsequent creditors, in order to render it void as to them. The question is generally one of fact. A conveyance can only be valid as to them when they are not intended or liable to be delayed, hindered, or defrauded by it. If the creditor had notice of the conveyance at the time the debt was contracted, the conveyance will be valid as to him. When a transfer is rendered fraudulent by the retention of possession, it is also void as to them, for they are deceived by the false appearance of wealth, and thereby induced to give the vendor credit." *Bump*, 320, and many authorities in notes. We do not think that it was error to set aside, as against the creditors of C. A. Cobb, so much of the unrecorded deed from Dr. J. C. Maxwell as purports to convey the lot "for Miss Emma T. Cobb," leaving the title in C. A. Cobb and liable for his debts.

As to the allegation of error in setting aside the mortgage, which was, in fact, satisfied. Upon this mortgage treasurer Judson signed the following endorsement: "Received of C. A. Cobb, for Miss Emma T. Cobb, $2,460, on note of J. C. Maxwell, for the security of which the mortgage was given; and I do hereby assign to C. A. Cobb, for Miss Emma T. Cobb, the mortgage to better protect his title to said property conveyed to him by J. C. Maxwell." If the assignment, as stated, was intended to protect the rights of C. A. Cobb, we do not see how it could so operate; for Dr. Maxwell had paid the note it was given to secure, and executed titles to C. A. Cobb "for Miss Emma T. Cobb." If it was intended to protect Miss Cobb under the provision of the deed "for Miss Emma T. Cobb," we have already endeavored to show that said provision was fraudulent and void as against the creditors without notice of C. A. Cobb; and in

this view we concur with the Circuit Judge, that the assignment of the mortgage must follow the provision in the deed "for Miss Emma T. Cobb."

As to the necessity for the plaintiffs to exhaust their legal remedy before bringing action, we need only say that the judgments were against C. A. Cobb alone, and had been returned *nulla bona* by the sheriff, which is regarded the appropriate and necessary evidence of inability to secure payment otherwise. *Suber* v. *Chandler*, 18 S. C., 526.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.

The defendants filed a petition for a rehearing of this case, alleging that some of the grounds taken by them in their exceptions and argument had not been considered by the court. Upon this petition, the following order was endorsed December 1, 1888:

PER CURIAM. We have carefully considered this petition, and fail to find that the court overlooked any material proposition of law or question of fact, and under the well settled rule there is no ground for a rehearing. It is ordered, that this petition be dismissed, and that the *remittitur* be sent down to the court below without further delay.