CYRIL C. CHILD *vs.* BOSTON AND FAIRHAVEN IRON WORKS & others.

Suffolk. March 24, 25. — Sept. 5, 1884. DEVENS & COLBURN, JJ., absent.

The liability for damages arising from the infringement by a corporation of letters patent is not, before judgment is obtained against the corporation, a "debt," within the meaning of the St. of 1870, c. 224, § 38, making the officers of a corporation liable for its debts in certain cases.

FIELD, J. The plaintiff's case, as stated in this bill in equity, is that the defendant corporation, during the years 1869, 1870, 1871, and 1872, was engaged in manufacturing printing-presses, in violation of the rights secured to the plaintiff by letters patent of the United States; that on December 17, 1872, he filed his bill of complaint against the corporation in the Circuit Court of the United States for the District of Massachusetts, wherein it was adjudged that the letters patent were valid; and that the corporation had infringed the plaintiff's rights under the same, by the manufacture of printing-presses; that on March 23, 1880, he obtained a final decree against the corporation for $5640.26 damages and $1778.88 costs, as the profits which had accrued to

the corporation from the manufacture of the printing-presses; that execution issued therefor, and was returned unsatisfied, whereupon the plaintiff brought this bill, for himself and all other creditors of the corporation, against the corporation and five persons who were officers and directors of the corporation during the years 1869, 1870, 1871, and 1872.   The bill also alleges, that, on December 17, 1872, when the bill in equity in the Circuit Court was filed, the debts of the corporation contracted by these officers in its management exceeded by $9000 its capital stock; and that, in 1871, 1872, and 1873, these officers, or some of them, knowingly signed and filed false certificates of the assets and liabilities of the corporation.

The defendants have demurred to the bill; and the question raised by the demurrer is whether the defendants are liable to the plaintiff under the St. of 1870, *c.* 224, § 38, *cl.* 3, 4.   (See Sts. 1863, *c.* 169; 1870, *c.* 224, §§ 13, 33.)   This is to be decided by determining whether the profits to be accounted for by the defendants in suits in equity for an infringement of patents, under the U. S. Rev. Sts. § 4921, constitute a "debt" or "contract," within the meaning of the St. of 1870, *c.* 224, § 38.   See Pub. Sts. *c.* 106, § 60, *cl.* 3, 5.   For the prior legislation on this subject, see Sts. 1863, *c.* 246, § 2; 1862, *c.* 218, § 1; Gen. Sts. *c.* 60, §§ 18–21, 25, 27, 30; *c.* 61, § 11; St. 1851, *c.* 133, § 11; *c.* 315; Rev. Sts. *c.* 38, §§ 17–19, 23, 28, 30; Sts. 1829, *c.* 53; 1826, *c.* 137; 1821, *c.* 38; 1817, *c.* 183; 1808, *c.* 65.

There are two sets of provisions in our statutes, one making the officers of a corporation, and the other its members, liable, in the cases specified, for the debts and contracts of the corporation. Many of the early charters in this Commonwealth made the persons and property of the members of the corporation liable in all cases to be taken on an execution against the corporation, apparently following the analogy of inhabitants of towns.   See, for example, the St. of 1791, *c.* 32, § 4, passed February 23, 1792, incorporating the Proprietors of the Locks and Canals on the Connecticut River; the St. of 1794, *c.* 55, § 1, passed February 27, 1795, creating a corporation for the purpose of bringing water into the town of Boston; the St. of 1797, *c.* 67, § 7, passed March 1, 1798, incorporating the Massachusetts Mutual Fire Insurance Company; the St. of 1800, *c.* 63, § 8, passed March

6, 1801, incorporating the Ossapee Mining Company ; the St. of 1803, *c.* 61, § 6, passed June 23, 1803, incorporating the Danvers and Beverly Iron Works Company; and the St. of 1804, *c.* 139, § 8, passed March 16, 1805, incorporating the Amesbury Nail Factory Company.

The early charters of insurance companies usually did not make the members liable for the debts of the corporation, but contained a provision, that if, after losses had occurred that should be equal to the amount of the capital stock, the president or directors, knowing such losses, should subscribe to any policy, their estates jointly and severally should be accountable for the amount of any loss that should take place under policies thus subscribed. See, for an example, the St. of 1803, *c.* 42, § 12, passed June 22, 1803, incorporating the Portland Marine and Fire Insurance Company.

The first general statute was the St. of 1808, *c.* 65. By § 6, an execution issued on any judgment in any civil action against a manufacturing corporation, if the corporation did not within . fourteen days after demand show to the officer sufficient property to satisfy the judgment, could be levied upon the body or upon the real or personal estate of any member of the corporation. By the St. of 1817, *c.* 183, if the corporation did not, before the return day of any execution, issued on any judgment in any civil action against a manufacturing corporation, show to the officer sufficient property to satisfy the judgment, an *alias* execution might be taken out and levied upon the body or estate of any member of the corporation, or upon the body or estate of any person who was a member of the corporation at the time when the debt accrued "upon which such writs or executions may have issued."

The St. of 1821, *c.* 38, provided "that every person who shall become a member of any manufacturing corporation, which may hereafter be established within this Commonwealth, shall be liable, in his individual capacity, for all debts contracted during the time of his continuing a member of such corporation."

The general liability of members of corporations established by the St. of 1808, *c.* 65, for all manufacturing corporations thereafter created, was limited to special cases by the St. of 1829, *c.* 53, as to all manufacturing corporations created after this act,

with a provision that manufacturing corporations already existing might adopt the act, § 13, and thus render their members not liable thereafter to have their persons or property taken on writs or execution against the corporation, " except for the causes, and in the manner, herein provided." This statute, by §§ 6, 9, 10, made the officers personally liable for claims and demands against, or debts of, the corporation, under special circumstances. See Rev. Sts. *c.* 38, § 27 ; Gen. Sts. *c.* 60, § 28.

Whatever reason once existed for giving a liberal construction to the word " debt " in the earlier statutes, on the ground that a stockholder in every manufacturing corporation was liable to have his property taken to satisfy any judgment in any civil suit against the corporation, has now ceased to exist, when the stockholders and officers are only liable under special provisions of statute.

The word " debts," and the words " debts and contracts," do not in their legal sense ordinarily include liabilities for torts not reduced to a judgment. There is nothing in the statutes indicating that, for the causes stated, the officers were to be made responsible for all the liabilities of the corporation. *Gray* v. *Bennett,* 3 Met. 522. *Chase* v. *Ingalls,* 97 Mass. 524. *Lowell* v. *Street Commissioners,* 106 Mass. 540. *Zimmer* v. *Schleehauf,* 115 Mass. 52. *Heacock* v. *Sherman,* 14 Wend. 58. *Esmond* v. *Bullard,* 16 Hun, 65. *Archer* v. *Rose,* 3 Brewst. 264. *Cable* v. *McCune,* 26 Mo. 371. *Dryden* v. *Kellogg,* 2 Mo. App. 87. *Bohn* v. *Brown,* 33 Mich. 257, 263.

It was said by Chief Justice Shaw, in *Gray* v. *Coffin,* 9 Cush. 192, 199, that " to create any individual liability of members for the debt of a corporation, a body politic, created by law, and regarded as a legal being, distinct from that of all the members composing it, and capable of contracting and being contracted with as a person, is a wide departure from established rules of law, founded in considerations of public policy, and depending solely upon provisions of positive law. It is, therefore, to be construed strictly, and not extended beyond the limits to which it is plainly carried by such provisions of statute."

In *Mill Dam Foundery* v. *Hovey,* 21 Pick. 417, 455, a case arising under the St. of 1829, *c.* 53, Chief Justice Shaw said : " For, though a question was made whether such a claim for

unliquidated damages is a debt, within the meaning of the statute, we do not think it admits of a reasonable doubt, that all such claims for damages were intended to be included in the term 'debts.'" The claim there was of unliquidated damages for the breach of a contract by the corporation. See also *Byers* v. *Franklin Coal Co.* 106 Mass. 131; *Hawes* v. *Anglo-Saxon Petroleum Co.* 101 Mass. 385.

In *Carver* v. *Braintree Manuf. Co.* 2 Story, 432, one Edson was excluded as a witness on the ground that he was interested in the event of the suit. The action was case for the infringement of a patent. The defendant was created a corporation by the St. of 1823, *c.* 45, and was made subject to the St. of 1808, *c.* 65, and the several acts in addition thereto. Edson was a stockholder at the time of the alleged infringement, although it seems he had sold out his stock before the action was brought. Mr. Justice Story said : " I follow out the doctrine of the case of *Mill Dam Foundery* v. *Hovey*, 21 Pick. 455, which, as far as it goes, disclaims the interpretation of the word 'debt' as limited to contracts for the payment of determinate sums of money. Passing that line, it does not seem to me easy to say, that if cases of unliquidated damages may be treated as debts, because they end in the ascertainment of a fixed sum of money, that we are at liberty to say, that the doctrine is not equally applicable to all cases of unliquidated damages, whether arising *ex contractu* or *ex delicto*. If ultimately it ends in a debt, as a judgment for damages does, that case asserts, that its character as a debt relates back to its origin. Besides, it seems to me upon principle to be reasonable, if not absolutely justified by authority, to hold, that if the transaction occurs while a person is a member of the corporation, and he would, if he remained a member, be liable for the ultimate debt adjudged, it may well be treated as an inchoate debt consummated by the judgment." 2 Story, 451.

This case was cited in *Wyman* v. *American Powder Co.* 8 Cush. 168, 182, which was an action of assumpsit, and, independently of the form of it, the cause of action was essentially *ex contractu*. There are no cases decided by the courts of the Commonwealth in which a stockholder has been held liable for a tort of the corporation, and the decision of Mr. Justice Story stands unsupported by any direct authority, either before or since.

The St. of 1870, *c.* 224, § 38, provides that " the officers of corporations shall be jointly and severally liable for its debts and contracts in the following cases, and not otherwise." The second clause of § 38 provides that they shall be liable for all " debts contracted between the time of making or assenting to a loan to a stockholder and the time of its repayment, to the extent of such loan." The third clause provides that, " when the debts of a corporation shall exceed its capital," they shall be liable " to the extent of such excess existing," &c. The debts and contracts of a corporation may not be the debts and contracts of individuals, because the corporation is a legal person and can contract. If the corporation is worthless, the creditor may have no effectual remedy, and therefore in the cases specified the statute has given an additional remedy. In this respect, the statute was enacted apparently for the protection of persons who deal with the corporation. But the torts of a corporation are also the torts of natural persons, because the corporation can only act by means of persons, and these persons are liable as well as the corporation. There are indeed torts arising from contracts for which either case or assumpsit is the proper form of action, but the action in either form is essentially an action for the breach of a contract, express or implied. Liability for wrongs done which are independent of contracts cannot, we think, be considered a debt or contract within the meaning of the statute. Whether, if a judgment is recovered in an action of tort, it then becomes a debt of record within the meaning of the statute, we have no occasion to consider, because there is no allegation that any of the personal defendants were officers of the corporation, or did any of the acts alleged at or after the time when the final decree against the corporation was entered. See *Curtis* v. *Harlow*, 12 Met. 3.

The plaintiff contends that, as the decree is only for the profits that accrued to the defendant corporation, his claim is not for damages arising from a tort, but for a debt due from the corporation, for money received to his use ; and *Watson* v. *Holliday*, 20 Ch. D. 780, is cited. In that case Mr. Justice Kay said : " It is a case in which the claim undoubtedly arises from that which is properly called in legal language a tort ; and if I were to hold the claim to be for damages, or in the nature of

damages, I must hold that the thirty-first section takes away that right of proof, which I cannot doubt existed in respect of this equitable 'claim, before that section was passed." He then considers an account of profits in a suit for the infringement of a patent, not as a remedy in the nature of damages, but as an equitable claim for money had and received, regarding the person who has committed the tort as having been in fact in the position of an agent or trustee for the plaintiffs, and he admits the claim to proof under the St. of 32 & 33 Vict. *c.* 71, § 31. It is a well-known rule that, if property has been wrongfully converted and sold, the owner may waive the tort, and sue for the money ; but the foundation of the action is a tort for which trespass or case would lie, and the action proceeds, not on the ground of a contract, but of an equitable obligation to pay over the proceeds of the sale. *Jones* v. *Hoar*, 5 Pick. 285. *Bigelow* v. *Jones*, 10 Pick. 161.

*Root* v. *Railway*, 105 U. S. 189, reviews the United States cases on the nature of profits which are recoverable in a suit in equity brought to enjoin the infringement of a patent, and holds that they are awarded in equity only as an incident to some other equity, the right to enforce which secures to the patentee his standing in a court of equity.

That the infringement of a patent is essentially a wrong independent of contract, has not been denied. The Circuit Court of the United States, in taking jurisdiction in equity to restrain the further infringement of a patent, before the U. S. St. of July 8, 1870, was accustomed to decree to the plaintiff the profits actually received by the defendant; and as the court, as a court of equity, was not expresssly authorized by statute to award damages, it proceeded on the equitable theory of treating the wrongdoer as a trustee holding for the use of the patentee the profits actually received for the use or sale of the patented article; but these, if the plaintiff elected to claim them, were in the nature of compensation or damages for the wrong done, although perhaps not all the damages recoverable if the plaintiff also brought an action at law.

By the U. S. St. of July 8, 1870, § 55, the complainant in a bill in equity for the infringement of a patent is entitled to recover, " in addition to the profits to be accounted for by the

defendant, the damages the complainant has sustained thereby, and the court shall assess the same or cause the same to be assessed under its direction, and the court shall have the same powers to increase the same in its discretion that are given by this act to increase the damages.found by verdicts in actions upon the case," &c. See U. S. Rev. Sts. § 4921. Since this statute, the complainant, if he can maintain the bill, is entitled to recover damages in equity as fully as he can at law. If he recover only the profits, they are regarded as a full compensation for the injury sustained by the infringement. The case of *Root* v. *Railway*, *ubi supra*, shows that the infringer is not in fact a trustee of the patentee for the profits.

We think that the decree which the plaintiff has obtained against the defendant corporation is, in legal effect, a judgment for all the damages done him by the infringement of his patent, which was a tort not arising from any contract, and that the liability therefor, before the decree was obtained, was not a " debt " or " contract," within the meaning of the St. of 1870, *c.* 224, § 38.                                        *Bill dismissed.*

*C. Browne*, for the defendants.

*C. E. Washburn*, for the plaintiff.

