W. H. CRABB, APPELLANT, V. FRANK MORRISSEY ET
AL., APPELLEES.

[FILED JANUARY 13, 1891.]

**Evidence**, *held*, to sustain the findings and judgment.

APPEAL from the district court for Lancaster county.
Heard below before FIELD, J.

*Cornish & Tibbets*, for appellant, cited: Devlin, Deeds,
sec. 738; *Pemberton v. Pollard*, 18 Neb., 435; *Rosenfield
v. Chada*, 12 Id., 25; *Kennedy v. Green*, 3 M. & K.
[Eng. Ch.], 719; *Fellows v. Wise*, 55 Mo., 413; *Wood v.
Carpenter*, 101 U. S., 135; *Yancy v. Cothran*, 32 Fed.
Rep., 687; *Carr v. Hilton*, 1 Curtis [U. S. C. C.], 390;
*Buckner v. Calcott*, 28 Miss., 434; *Price v. Reed*, 13
West. Rep., 510; *Bayard v. Norris*, 5 Gill [Md.], 483;
*Green v. Early*, 39 Md., 229.

*Pound & Burr*, and *O. P. Davis*, contra, cited: *Mansfield
v. Gregory*, 8 Neb., 432; *Harral v. Gray*, 10 Id., 189;
*Reynolds v. Cobb*, 15 Id., 381; *Westheimer v. Reed*, Id.,
664; *Clark v. Tennant*, 5 Id., 549; *Gehling v. Hinton*, 12
Id., 557; *Altman v. Steinan*, 8 Id., 114; *Cresswell v. Mc-
Caig*, 11 Id., 227.

NORVAL, J.

Prior to the 25th day of May, 1887, the defendant,
Frank Morrissey, was indebted to plaintiff in the sum of
about $900.    On the said 25th day of May judgment
was rendered against Morrissey in favor of plaintiff, in
Lincoln county, Nebraska, for the sum of $199.85 and
costs.    On the 2d day of June, 1887, a second judgment
was rendered against Morrissey, and in favor of plaintiff,

11

for the sum of $32.15 and costs, in same county. On the 5th day of July, 1887, a third judgment was rendered against Morrissey, and in favor of plaintiff, for the sum of $665.91 and costs, in Frontier county. On the 3d day of July, 1889, transcripts of the first two of these judgments were filed with the clerk of the district court of Lancaster county, Nebraska, and on the 11th day of July a transcript of the last judgment was similarly filed. On September 13th, 1887, executions were issued on said judgments, which were subsequently returned unsatisfied.

On the 25th day of May, 1887, Morrissey was the owner of 320 acres of land in Lancaster county, and on that date, by warranty deed of himself and wife, this real estate was transferred to the defendant, Patrick Jones, who is the father-in-law of Morrissey. On the 27th day of May Jones and wife transferred the real estate by quitclaim deed to defendant Mary Ann Morrissey, the wife of defendant Frank Morrissey. On the 9th day of August, 1887, Mary Ann Morrissey and husband conveyed said real estate by warranty deed to Louis Meyer, which deed was filed for record on September 27, following.

On the 17th day of September, the plaintiff commenced this action against defendants, Frank Morrissey, Mary Ann Morrissey, Patrick Jones, and Mary Jones, for the purpose of setting aside the two deeds first above named and subjecting the property to the payment of plaintiff's judgments. Subsequently, on application of Meyer, he was made a party defendant. The trial court found the issues in favor of the defendants and dismissed the action. The plaintiff appeals.

It is undisputed that the conveyances from the Morrisseys to Jones, and from Jones and wife to Mrs. Morrissey, were colorable and without consideration. The *bona fides* of the transfer to Meyer is questioned.

The record shows that a few days prior to August 9, 1887, Mrs. Morrissey went to Meyer and proposed to sell

him the land involved in this suit, saying that the mort-
gages against it amounted to considerable, and that she did
not see her way out.   He informed her that he would
think it over and for her to come in again.   On August 9
Mrs. Morrissey called to see him again, when he made her
an offer of $7,000 for the place, which was accepted.   Be-
fore the trade was closed Mr. Baird examined the records
and reported to Meyer that everything was all right except-
ing certain mortgage liens.   As soon as the deed was pre-
pared and signed, the Morrisseys and Meyer went into the
First National Bank of Lincoln where Meyer drew his
check upon the bank for $1,000, received the money thereon
and paid it to Mrs. Morrissey in the bank.   At the same
time he gave her his promissory note for $2,500 due in
four years, drawing six per cent interest.   That the $1,000
was actually paid and the note given is not disputed.   The
bank subsequently purchased the note, or holds it for the
Morrisseys—at least Meyer pays the interest thereon to the
bank.   The mortgage liens on the land at the time of the
transfer amounted to $3,500, which Meyer assumed as a
part of the consideration.   He has since paid the interest
on these mortgages as the same fell due and has built an
addition to the house.   He also leased the farm to Mrs.
Morrissey for an annual rental of $575, and she has paid
him the rent according to the contract of lease.   It is not
claimed that the land was worth more than $7,000, the
contract price.

The fact that the note for $2,500 given by Meyer in
part payment for the land was unsecured is not material so
long as the financial responsibility of the maker is not
questioned.   The delay in placing the deed upon record is
fully explained by Mr. Meyer in his testimony.   The
trade was closed about 4 o'clock in the afternoon, and the
deed was placed in Mr. Meyer's safe.   The next day he
started on a business trip to New York, and did not return
for about four weeks.   After his return, in looking among

his papers he discovered the unrecorded deed and immediately filed it for record.    It does not appear that it was purposely kept from the records, and certainly the plaintiff was in no manner prejudiced by the delay.    Nor, in our view, did the failure to file tend to impeach the good faith of the transfer.    Had Meyer taken the title for the purpose of aiding Morrissey to hinder, delay, and defraud his creditors, the most usual thing would have been to place the deed on record at once.

The testimony fails to show that Meyer had any notice or knowledge of the fraudulent purpose of the Morrisseys, while on the other hand it is clearly established that Meyer acted in the utmost good faith, and paid for the land its fair value.    Had the plaintiff commenced his action to subject the land to the payment of his judgments before the sale to Meyer, or had Meyer had knowledge of the purpose of the sale, the case would be quite different.    The plaintiff should have questioned these transfers before the title to the lands had passed to an innocent holder.    While it is true the transcripts of plaintiff's judgments were on file when Meyer purchased the lands, yet, as the legal title to the real estate was in Mrs. Morrissey when they were filed, the plaintiff acquired no lien upon the lands by the filing. The evidence fully sustains the findings of the district court and the judgment is ·

AFFIRMED.

THE other judges concur.