BESSIE R. WAREHEIM v. BESSIE M. BAYLISS.

*Fraudulent Conveyance — Adequacy of Consideration — Intent Necessary.*

A debtor may sell, for a valuable consideration, a part or all of his property, even though he is financially embarrassed or insolvent, and such sale may hinder or delay creditors, a conveyance under such circumstances not being fraudulent unless there is a fraudulent intent which is common to both seller and purchaser.                                                        p. 107

The satisfaction of an antecedent debt is a fair consideration for the transfer in good faith of property fairly equivalent in value to the debt satisfied.                                       p. 107

A transfer of certain properties for an adequate consideration, accompanied by the giving by the same person of a confessed judgment in favor of a relative for an existing debt, and the subsequent mortgaging of one of the properties by the transferee, *held* not to involve a scheme by the transferor, with the knowledge of the transferee, to hinder and delay the collection of a claim against such transferor on account of the death of the claimant's son, caused by the negligence of the transferor's servant, a few days before the transfer.      pp. 107, 108

The mere paying of one creditor in preference to another does not constitute a fraud.                                         p. 108

*Decided November 6th, 1925.*

Appeal from the Circuit Court of Baltimore City (Sol-ter, J.).

Bill by Bessie M. Bayliss against Bessie R. Wareheim and others. From a decree for plaintiff, the defendant named appeals. Reversed.

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, Parke, and Walsh, JJ.

*Paul M. Higinbothom,* with whom were *Curran & Leach* on the brief, for the appellant.

*Stephen W. Leitch,* for the appellee.

WALSH, J., delivered the opinion of the Court.

On December 11th, 1924, Mrs. Bessie M. Bayliss, the appellee, secured a judgment for $3,000 in the Baltimore City Court against Murray A. Myers for damages arising from the killing, on March 31st, 1923, of her infant son by an automobile operated by the son and servant of Myers. On December 15th, 1924, the appellee filed her bill of complaint in this case against Myers, his wife, and Mrs. Bessie R. Wareheim, and Jennie L. Myers, his sisters, alleging that the transfer of two properties on Mosher Street, made by Myers and his wife to Mrs. Wareheim on April 2nd, 1923, and a confessed judgment for $2,000 given on the same date by the same parties to Jennie L. Myers, were made without consideration, and were given for the purpose of hindering and delaying the appellee in the collection of her above mentioned claim against Myers.

Jennie L. Myers was never summoned, but the case proceeded against the others, and at its conclusion the learned chancellor set aside the deed as to one of the properties conveyed (No. 2534 Mosher Street, which Myers owned in his own right), and from that decree Mrs. Wareheim has appealed. Counsel for the appellant stated at the argument in this court that Myers and his wife also intended to appeal, but through a clerical mistake their names were omitted from the order for an appeal.

The testimony shows that on the day the appellee's son was killed, Saturday, March 31, 1923, Murray A. Myers owned in his own right the leasehold property known as No. 2534 Mosher Street, worth about $1250, and he and his wife owned, as tenants by the entireties, the fee simple property known as No. 2530 Mosher Street, worth about $4,000, which latter property they occupied as a residence. Aside from these two properties, Myers' assets consisted of three

second-hand automobiles, worth not more than $500, a $1,000 life insurance policy, and certain routes along which he sold butter and eggs, this business netting him between thirty and sixty dollars a week.

On Monday, April 2nd, 1923, Myers and his wife conveyed both the properties on Mosher Street to the appellant for an alleged consideration of $5,000. Myers testified that this consideration was made up of $1250 cash paid him by the appellant, a $1200 note given him by the appellant and subsequently paid by her with interest, the cancellation of a $250 debt which he owed the appellant, and the assumption by the appellant of $1800 of a $2,000 debt which he owed his sister Jennie L. Myers, and of a $500 debt which he owed his brother Andrew. He also testified that at the time the conveyance was made he owed an uncle $400, owed a doctor's bill of $100, needed cash to pay his son's traffic court fine of $114, and needed several hundred dollars to employ counsel to defend his son, who was charged with manslaughter as a result of the automobile accident. The testimony further showed that on April 2nd, 1923, Myers and his wife gave his sister Jennie L. Myers a confessed judgment for $2,000 to secure the above mentioned debt of $2,000, which judgment was recorded that same day.

Myers' testimony regarding this $2,000 is supported by the testimony of Jennie L. Myers and the appellant, and also by the testimony of the attorney who prepared both the deed and the confessed judgment. The $500 debt due his brother Andrew was sworn to by Andrew and is evidenced by a promissory note for that amount dated January 27, 1923, and signed by Myers and his wife, which note was filed as an exhibit, and the debts of $400 and $250 due the uncle and the appellant, respectively, are also evidenced by notes filed in the case. In addition to these notes, certain checks of the appellant to Myers showing payments aggregating $1,245 and said to be in payment of the $1200 note and interest, given as part of the purchase price of the properties on Mosher Street, were filed, and there is also a check for

$600 payable to Jennie L. Myers and alleged to be in part payment of the $1800 debt owed by Myers to Jennie L. Myers, and assumed by the appellant at the time of the transfer of the properties.

It further appears that in May, 1923, the appellant gave a mortgage for $1,144 on the property at 2534 Mosher Street to the Traders' Building Association, that under the terms of this mortgage the appellant paid a stipulated amount each month to the association and that that organization took care of the taxes and water rent out of those payments, applying the balance to the interest and principal of the mortgage, and that a considerable balance was still due on this mortgage at the time the case was tried below. There was also uncontradicted evidence that at least one bill for repairs on the property had been paid by the appellant subsequent to the date it was transferred to her.

The appellee contends that the transfer of the properties, the giving of the confessed judgment, and the subsequent mortgaging of 2534 Mosher Street to the building association, were all part of a scheme devised by Myers, with the knowledge of the appellant, to hinder, delay and defraud the appellee in the collection of her claim against him arising from the death of her son, and she points to the fact that practically all of Myers' alleged creditors were relatives, that subsequent to the transfer of the properties he continued to occupy No. 2530 Mosher Street as a residence, paying an alleged rent of $30 per month to the appellant, and that he continued to collect the rent for No. 2534, as convincing evidence of the alleged fraud. The lower court agreed with this contention so far as No. 2534 Mosher Street was concerned, and from a decree setting aside the transfer of that property this appeal was taken.

Whatever difficulty exists in suits of this character is to be found in the application of well-settled legal principles to the facts and circumstances of particular cases, and not in the enunciation of those principles.

The law governing transfers of all the debtor's property is thus clearly stated in 27 *Corpus. Juris,* 499 :

"A debtor is not deprived of his right to sell, for a valuable consideration, a part or all of his property, merely because he is financially embarrassed or insolvent, even though such sale may hinder or delay creditors. The fact that the grantor is insolvent at the time he executes the conveyance is not of itself a ground for setting aside the conveyance. Such a conveyance is not fraudulent unless there is a fraudulent intent which is common to both seller and purchaser."

And these principles are amply sustained by our own decisions. *Merchants' Bank v. Page,* 147 Md. 607; *Commonwealth Bank v. Kearns,* 100 Md. 208; *Castleberg v. Wheeler,* 68 Md. 266, 275; *Crane v. Barkdoll,* 59 Md. 534, 538; *Fuller v. Brewster,* 53 Md. 358; *Totten v. Brady,* 54 Md. 171. And it is also established in Maryland that the satisfaction of an antecedent debt is a fair consideration for the transfer in good faith of property fairly equivalent in value to the debt satisfied. Section 3a of article 39B of the Code (The Fraudulent Conveyance Act) ;*Merchants' Bank v. Page, supra; Fuller v. Brewster, supra.*

There is no question in this case as to the adequacy of the consideration; $5,000 was admittedly a fair price for the property, if that sum was actually paid for it, and we think the proof shows that that sum was paid. It is conceded that Myers needed $314 to pay the traffic court fine and his son's attorney; the existence of the $2,000 debt he alleges he owed Jennie L. Myers is supported by the testimony of Mr. Harry L. Price, a reputable member of the Baltimore Bar; and his debts to the appellant, his brother, and uncle, are all evidenced by promissory notes. There is no evidence at all to contradict this, so that the only way in which the court could strike down the alleged consideration would be to conclude that Myers, his brother, and his two sisters have all deliberately perjured themselves, and such a conclusion we do not think justified by the record in the case.

In addition to this, it should be noted that the more val-

uable of the two properties, No. 2530 Mosher Street, was owned by Myers and his wife as tenants by the entireties, and so was not liable for the appellee's claim, nor for the claims of any of Myers' individual creditors. As a matter of fact, the only creditor who could have proceeded against No. 2530 Mosher Street was Andrew Myers, whose $500 note was signed by both Myers and his wife. All the other creditors, including the appellee with her unliquidated claim, could only have proceeded against No. 2534 Mosher Street, and this latter property was worth only $1,250. The testimony also shows that after the conveyance complained of, and before the appellee had even threatened to institute suit against Myers for damages arising from the death of her son, the latter offered to pay her $700 in settlement of her claim. Of course, this offer could not justify Myers in making a fraudulent conveyance of his property, but as the offer was but $550 less than the value of the only property owned by Myers which could be subjected to the payment of the claim, it does have some probative value on the question of whether or not Myers was actuated by any fraudulent intent in transferring his property. And, finally, there is some evidence that the appellant was looking for a piece of property to buy, and had actually considered the purchase of Myers' properties prior to the automobile accident. There are, it is true, some suspicious circumstances connected with this transaction, but, taking the proof as a whole, we do not think it sufficient to show any fraudulent intent on the part of either the grantor or grantee in the deed in question, and as the mere paying of one creditor in preference to another does not, as we have already said, constitute a fraud, we are compelled to reverse the decree of the lower court.

The appellant urged with some force in this court an exception taken by her to certain parts of the testimony of the attorney, Mr. Price, but as what we have already said will finally dispose of the case, we deem it unnecessary to further prolong this opinion by a discussion of this point.

*Decree reversed, the costs to be paid by the appellee.*