(No. 5347. February 24, 1930.)

ED SNELL, LUCY SNELL, EMMA SNELL PEDERSON and JULIA RUSKY, Appellants, v. H. C. PRESCOTT and ELLEN E. PRESCOTT, His Wife, Respondents.

[285 Pac. 483.]

S. Ben Dunlap, for Appellants.

Rhodes & Estabrook, for Respondents.

McNAUGHTON, J.—In 1918 the respondents, H. C. Prescott and Ellen E. Prescott, quit their farm near Nampa. Prescott had purchased Lot 55 of Block 55 of the original town site of Nampa. They had been engaged in farming for over 45 years, part of the time in Minnesota, most of the time in Idaho. Upon moving to town they did not sell the farm nor the stock or personal property on it. It seems their farm consisted of eighty acres of very productive land, forty acres of which were in the name of H. C. Prescott and claimed by him as his separate property, and the other forty were in the name of his wife, Ellen E. Prescott, claimed by her as her separate property.

On the twenty-third day of August, 1921, H. C. Prescott by deed conveyed the Nampa residence property to his wife, Ellen E. Prescott, as her sole and separate property in consideration of one dollar and love and affection.

Prior to November, 1920, H. C. Prescott purchased shares of capital stock of the North Side Lumber & Milling Company, for which he gave his note for $1,000; this note he later paid. On November 29, 1920, he, together with W. W. Snell and others, indorsed a note given by the lumber company to I. M. Rockefeller in the sum of $6,000, bearing interest at ten per cent and due in six months. On March 4, 1921, Prescott was one of twenty-two who jointly and severally indorsed what is designated in the record as the Bow note, which was for $9,350, with interest at ten per cent, due in six months.

In 1925 the Rockefeller note, after suit was brought against the estate of W. W. Snell, who was then deceased, was paid by the estate and an assignment taken. Action

was begun against Prescott for contribution and judgment for $2,093.97 was obtained in 1926. Execution issued on this judgment and all the right, title and interest of H. C. Prescott in the property involved in this action, to wit, the Nampa residence property, transferred to his wife in 1921, was sold in satisfaction of that judgment. This action is for the annulment of the 1921 deed from H. C. Prescott to Ellen E. Prescott conveying the Nampa property. The action is based upon the claim that the conveyance was fraudulent and with intent to hinder, delay or defraud the creditors of H. C. Prescott and as to them void under C. S., sec. 5433.

The trial court found that at the time Prescott made the conveyance in question there was no intention to defraud, hinder or delay any of his creditors. The trial court also found that at the time of the transfer Prescott was not insolvent.

It is claimed by the appellants that at the time of the conveyance of this property by H. C. Prescott to his wife, it is shown he was clearly insolvent and that it therefore follows as of course that the transfer was void as to creditors.

Appellants specify four assignments of error, but as counsel states, the whole question at issue is: Was the deed of August 23, 1921, made with intent to delay or defraud the creditors of H. C. Prescott? In other words, was this conveyance void under C. S., sec. 5433?

It is claimed by appellants that Prescott's liabilities at the time the transfer was made, as shown by the evidence, were $16,350; that his assets in property retained after the transfer were only $12,107.17; that a homestead declaration had been filed on his farm land twenty-two years before, and that the total of his assets should be reduced $5,000 on that account, leaving at most not to exceed $7,107.17 applicable to the satisfaction of his liabilities.

If this were the whole story a strong case of fraud indeed would be made. But while Prescott was liable in the full amount of those two notes, it was as an indorser, and other

indorsers financially responsible were equally liable. Their property was as legally and morally bound to pay these notes as Prescott's. Of the indorsers on the Bow note, from the testimony offered with respect thereto, nineteen besides Prescott were financially able to pay the note, and from this very proceeding it seems that two of the other indorsers on the lumber company's note were able to pay their contribution of one-third. In testing the *bona fides* of the transfer in question we think it reasonable to calculate that at the time of the transfer respondent might have considered and the court was justified in considering that his liabilities on these two obligations probably would not exceed twenty-five or twenty-six hundred dollars in contribution—$500 on account of the Bow note and $2,100 on account of the lumber company's note.

In addition to the fact that the respondent Prescott did not transfer all his property, but only the town residence, and kept property of value far greater than would reasonably be thought ample to pay his contribution as indorser on these two notes, there is another circumstance pertinent. He testified he did not know at the time of the transfer in question that the lumber company was in fact unable to meet its obligations; that advices he had received from those in charge of the company were to the contrary, and in this he is not contradicted.

There are jurisdictions in which voluntary conveyances are conclusively presumed to be fraudulent as to existing creditors regardless of the actual intent of the parties or the financial condition of the grantor. (*Southern Ry. Co. v. Hartshorn,* 150 Ala. 217, 124 Am. St. 68, 43 So. 583; *Cook v. Johnson,* 12 N. J. Eq. 51, 72 Am. Dec. 381; *Severs v. Dodson,* 53 N. J. Eq. 633, 51 Am. St. 641, 34 Atl. 7; *Bates v. Cobb,* 29 S. C. 395, 13 Am. St. 742, 7 S. E. 743.)

However, a majority of the courts take a less extreme view, holding usually that if the creditor has property remaining amply sufficient to pay his creditors, the mere

fact of indebtedness will not render a voluntary conveyance void as to his creditors. (*Brady v. Irby,* 101 Ark. 573, Ann. Cas. 1913E, 1054, 142 S. W. 1124; *Salmon v. Bennett,* 1 Conn. 525, 7 Am. Dec. 237; *Wagner v. Law,* 3 Wash. 500, 28 Am. St. 56, 28 Pac. 1109, 29 Pac. 927, 15 L. R. A. 784; *Second Nat. Bank v. Merrill & Houston Iron Works,* 81 Wis. 142, 29 Am. St. 870, 50 N. W. 503.)

In this state the courts have not endeavored to lay down any hard-and-fast rule whereby a voluntary conveyance is *per se* void as to creditors. Indeed this could not be done, because C. S., sec. 5435, provides that in all cases relating to this subject "the question of fraudulent intent is one of fact and not one of law."

Considering this subject under this statutory provision, this court announced the following rule in *Feltham v. Blunck,* 34 Ida. 1, 198 Pac. 763, 765:

"Under C. S., sec. 5435, the question of fraudulent intent is one of fact, and a transfer cannot be adjudged fraudulent solely on the ground that it was not made for a valuable consideration. (*Rogers v. Boise Assn. of Credit Men,* 33 Ida. 513, 23 A. L. R. 195, 196 Pac. 213; *Moody v. Beggs,* 33 Ida. 535, 196 Pac. 306.) But when a debtor being insolvent conveys all his property without consideration the inevitable result is to hinder and delay his creditors. As in all other cases, he is held to intend the natural consequences of his acts; thus the logical inference is that he intended to delay and hinder his creditors and, in the absence of circumstances which rebut that inference, the conveyance will be held in fraud of them."

In *McMillan v. McMillan,* 42 Ida. 270, 245 Pac. 98, 99, this court said:

"It is the general rule that a transfer of property with intent to defraud a creditor is void as against creditors; but it is recognized that a man may in good faith convey his property to his wife or anybody else, and it is no concern of his creditors if he still retains sufficient property to satisfy their legal demands."

To the same effect is *Moody v. Beggs,* 33 Ida. 535, 196 Pac. 306.

It is our conclusion that it was the duty of the district court to determine the *bona fides* of the transfer involved from all the facts and circumstances in evidence. The court found that the conveyance by H. C. Prescott to his wife, Ellen E. Prescott, was made in good faith, while he was entirely solvent, and without any intention to hinder, delay or defraud any of his creditors. We do not think the record discloses any strong, logical inference to the contrary. Indeed we think the record amply sustains the findings of the trial court and that the judgment should therefore be affirmed.

Costs to respondents.

Givens, C. J., and Budge, Lee and Varian, JJ., concur.

Petition for rehearing denied.