MURIEL BURKE & another vs. MARLBORO AWNING Co.
& others.

Middlesex.    November 5, 1952. — June 5, 1953.

Present: QUA, C.J., LUMMUS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Corporation*, Director's liability, Stockholder, Dividend. *Debt. Contract*, What constitutes. *Words*, "Debts and contracts."

A judgment entered against a business corporation in an action of tort
for personal injuries is not a "debt" or "contract" of the corporation
for which its directors may be liable under G. L. (Ter. Ed.) c. 156,
§§ 37, 38.  [295–297]

Apart from G. L. (Ter. Ed.) c. 156, §§ 37, 38, directors of a corporation
who caused all its assets to be distributed to the stockholders were
liable in equity to pay the value of the assets to judgment creditors
of the corporation holding unsatisfied judgments, in an aggregate
amount greater than such value, rendered against it in an action of
tort for personal injuries after the distribution of the assets.  [300–301]

A stockholder of a corporation was obligated to refund to it or to pay to
its creditors an amount distributed to him upon dissolution of the
corporation as a so called liquidating dividend which left the corpora-
tion without assets to satisfy the claims of the creditors.  [300]

BILL IN EQUITY, filed in the Superior Court on December
16, 1949.

The suit was heard by *Morton*, J.

*Walter R. Morris*, for the plaintiffs.

*Edmund R. Dewing*, for the defendants Batchelder and
another, submitted a brief.

WILLIAMS, J.  This is a suit in equity by two judgment
creditors of the Marlboro Awning Co., a Massachusetts
corporation, to recover from the corporation and from its
directors the balances remaining due on the judgments.
The bill, which states that it is brought in behalf of the
plaintiffs and other creditors of the corporation who may
join as plaintiffs, contains the following allegations.  On
March 1, 1946, the plaintiffs commenced an action of tort

against the corporation for personal injuries received in an automobile accident on November 26, 1945. After a jury trial they recovered judgments on May 23, 1949, and executions issued on the following day. The execution of the plaintiff Burke was in the sum of $15,915.20 and on June 6, 1949, was satisfied to the extent of $7,090.23 by payment from an insurance company. The execution of the plaintiff Loizides was in the sum of $3,177.50 and on June 6, 1949, was satisfied to the extent of $1,362 by payment from the same insurance company. Demands for payment of the balances due were made on the corporation by a deputy sheriff on June 23, 1949, who after thirty days made returns that the debtor corporation had neglected and refused to comply with the demands. On or about April 1, 1946, the corporation sold all or a part of its real estate and personal property and received therefor a large sum of money. "At all times thereafter [it] had sufficient cash assets to pay all of its debts and liabilities including the debt[s] owed" to the plaintiffs. On the same date or on some subsequent date the individual defendants Batchelder and Jones, being all of the directors of the corporation, "by a certain vote or votes declared a dividend" and pursuant thereto "distributed to its stockholders all or a great part of its cash assets as such dividend." The corporation was thereby rendered insolvent. Batchelder and Jones received the dividends and as directors and stockholders are jointly and severally liable to the plaintiffs to the extent of the dividends declared and received. It is further alleged that the defendants Granite Trust Company and Quincy Trust Company hold on deposit moneys of the individual defendants which it is sought to reach and apply in payment of the judgments.

The evidence is reported and the judge has made findings of material facts. The case is here on the plaintiffs' appeal from a final decree dismissing the bill.

The bill appears to be framed on G. L. (Ter. Ed.) c. 156, §§ 37 and 38. Section 37 provides, in part, that "The directors of every corporation shall be jointly and severally

liable for the debts and contracts of the corporation in the following cases: First. For declaring or assenting to a dividend if the corporation is, or thereby is rendered, bankrupt or insolvent, to the extent of such dividend." Section 38 provides, in part, that a creditor of the corporation who has made previous demand on the corporation may bring a suit in equity in behalf of himself and such other creditors of the corporation as may join in the bill as plaintiffs to enforce the liability of the directors imposed by § 37. It does not appear that any other creditor has joined in the plaintiffs' bill.

In order to recover under these sections of c. 156 the plaintiffs must show that the judgments which they seek to have paid by the directors are "debts" or "contracts" of Marlboro Awning Co. for which its directors are liable under § 37. These judgments were entered after verdicts in an action of tort for personal injuries. The statute under which the suit is brought is one of several in which liability is imposed on the officers of a corporation for the benefit of its creditors. See G. L. (Ter. Ed.) c. 156, § 36, as amended; c. 156, § 37, Second; c. 161, § 24; c. 164, § 32; c. 158, § 44. In all of these statutes the liability imposed is for the "debts and contracts" of the corporation.

It was decided in *Child* v. *Boston & Fairhaven Iron Works,* 137 Mass. 516, after a review of the early statutes, that an unliquidated claim in tort for the infringement of a patent right was not a debt or contract of the corporation within the meaning of St. 1870, c. 224, § 38, a statute now substantially embodied in G. L. (Ter. Ed.) c. 156, §§ 36, 37, and G. L. (Ter. Ed.) c. 158, § 44. In *Savage* v. *Shaw,* 195 Mass. 571, the plaintiff had recovered judgment in an action of tort for personal injuries against a street railway company and brought suit on the judgment under R. L. c. 112, § 19, now G. L. (Ter. Ed.) c. 161, § 24, against the directors of the company. A final decree was entered dismissing the bill. The court said at page 573, citing the *Child* case, "It is settled that this liability does not extend to torts committed by the corporation." In his discussion

of the issue involved Sheldon, J., said, "The natural import
of the language of the statute is that it contemplates or-
dinary debts or obligations voluntarily contracted by the
corporation rather than involuntary obligations imposed
upon it by law in consequence of the negligent or tortious
acts of its agents or servants. . . . . The judgment does es-
tablish a legal obligation on the part of the defendant therein
to pay the amount recovered; and in this Commonwealth,
as in most jurisdictions, the judgment against the corpora-
tion is conclusive in the suit against the directors and
stockholders of the existence and amount of the debt or
demand as declared on. . . . But it never has been held to
be conclusive upon the question of law whether the original
cause of action was such as to create an individual liability
in the officers or stockholders, and it manifestly cannot be
so held. . . . The fiction of law which implies upon the part
of a judgment debtor a promise to pay the judgment, which
will support an action of contract against him and upon
which the judgment may justifiably be called a debt or con-
tract of record, cannot be carried so far as to change an in-
voluntary into a voluntary assumption of liability. . . .
Accordingly we are of opinion that the plaintiff's claim,
though reduced to a judgment, is not a debt or contract of·
the corporation within the meaning of the statutes R. L.
c. 112, § 19; St. 1906, c. 463, Part III.  § 29" (pages 574–
575).  The meaning of "debts and contracts" as used in the
statutes relating to the secondary liability of corporate
directors is settled by the decision in *Savage* v. *Shaw*.  See
*Attorney General* v. *American Legion of Honor*, 196 Mass.
151, 158; *Continental Corp.* v. *Gowdy*, 283 Mass. 204.  It
must be held, therefore, that the judgments of the plaintiffs
are not debts or contracts of the corporation on which they
are entitled to recover under c. 156 from the defendant
directors.

We think, however, that apart from the statute the allega-
tions of the bill are sufficient to put in issue the liability of
the defendants Batchelder and Jones to repay to the corpo-
ration the amount of the dividends alleged to have been

declared and received. See *Cooperstein* v. *Bogas*, 317 Mass. 341, 342.

From the findings of material facts and from such findings as we are able to make from the evidence (see *Mullins* v. *Riopel*, 322 Mass. 256, 257) it appears that the defendant Marlboro Awning Co. was organized in 1936 as a manufacturing corporation under the name of C. H. Batchelder Co. Among its assets was a warehouse in Everett. There were 300 shares of stock of which, until 1945, 150 shares were owned by one Ralph H. Burton, 149 shares by the defendant Batchelder, and 1 share by his sister, the defendant Jones. In 1945 both Burton and Batchelder wished "to get rid of the business" and advertised it for sale, but with no results. On November 14, 1945, Burton sold his stock to Batchelder for $20,000. Batchelder paid Burton with money withdrawn from the funds of the corporation. Batchelder's wife became a director in place of Burton and thereafter Batchelder was both president and treasurer and conducted the business as if it were his own. Mrs. Batchelder and the defendant Jones appear to have been stockholders in name only.

On April 1, 1946, all of the assets of the corporation except the warehouse and bills receivable were sold to another corporation, C. H. Batchelder Co. Inc., for $25,000. The agreement of sale provided that no deliveries should be made by the seller corporation after March 26, 1946; that Batchelder would not compete with the new corporation; and that the seller corporation should change its name to one which would not be confused with that of the buyer. A part of the purchase price was paid in the form of notes, all of which were paid when due except one for $5,000 which has not been paid. Batchelder received personally that part of the purchase price which was paid.

After the sale of its assets the corporation did no further business. On March 7, 1947, there was a special meeting of the stockholders called for the purpose of changing the name of the corporation, in pursuance of the previous agreement with the purchaser, and to provide for liquidation. At that

meeting it was voted to change the name of the corporation from C. H. Batchelder Co. to Marlboro Awning Co. It was further voted "that whereas the corporation has ceased to do business and all corporate debts have been fully paid and corporate liabilities discharged, the corporate assets and property be distributed among the stockholders of the corporation according to their respective rights and interests"; that as Charles S. Batchelder was the sole stockholder of the corporation the clerk of the corporation be authorized to execute a deed to him of the real estate in Everett; and that the board of directors be authorized and directed to take such steps as may be necessary for the dissolution of the corporation and the distribution of its assets. The judge found that the directors voted to distribute the assets of the corporation to and among the stockholders. The corporation was dissolved on September 24, 1947. Batchelder received $4,832.38 from the sale of the warehouse property and $265.57 from a checking account of the corporation in the National Shawmut Bank.

It is Batchelder's contention that at the time he received the so called liquidating dividend he was not aware of the outstanding claims of the plaintiffs and that he was a creditor of the corporation. The judge found that in 1942 Batchelder lent to the corporation a sum in excess of $17,000; that thereafter he made various payments out of his own funds on behalf of the corporation to the amount of $38,-664.29; and that his advances were "satisfied in part and perhaps substantially by the moneys he received from the corporation." It appeared that he had received $20,000 which was withdrawn from the corporate funds to pay Burton and also $20,000 from the sale of the corporate assets. The judge stated "that a definite finding cannot be made as to whether or not the defendant Batchelder profited personally by withdrawals from the corporation, or on the other hand made generous contributions from his own estate in the payment of obligations of the corporation." This, we think, amounted to a finding that the indebtedness of the corporation to Batchelder had not been established. It

cannot be said that in failing to make a definite finding the judge was plainly wrong. We are unable on our part to determine from the evidence, which consisted mainly of oral testimony, the state of the account between Batchelder and the corporation. *Murphy* v. *Hanlon,* 322 Mass. 683, 686, 687.

It is not disputed that the plaintiffs have outstanding judgments against the corporation for the amounts alleged in their bill. Directors who distribute the assets of the corporation to its stockholders may independently of statute be personally liable to refund the amounts so distributed to the extent of unpaid debts, even though the corporation had no creditors at the date of the distribution and the debts were later incurred. *Calkins* v. *Wire Hardware Co.* 267 Mass. 52, 60. See Fletcher, Cyc. Corporations, §§ 1185, 1186. In this case the directors voted to distribute all of the assets of the corporation to and among the stockholders and Batchelder as the only stockholder received these assets, which appear to have been worth $5,097.95. Although there is no direct finding that the corporation was then insolvent or by the distribution was rendered insolvent, it is evident that after the distribution the corporation had no assets from which to satisfy the claims of the plaintiffs. As a dividend, the distribution was a mere gift, and the stockholder receiving it incurred an obligation to refund it either to the corporation or to its creditors. *Powers* v. *Heggie,* 268 Mass. 233, 242. *Moseley* v. *Briggs Realty Co.* 320 Mass. 278, 284–285. If it be considered to be in effect a payment to Batchelder as a creditor of the corporation, he is no less required to make refund. While a mere preference is ordinarily not a fraudulent conveyance, *Lyon* v. *Wallace,* 221 Mass. 351, 353; *Barishefsky* v. *Cohen,* 299 Mass. 360, 362; *Mason* v. *Wylde,* 308 Mass. 268, 283, a director of a corporation which is or is about to become insolvent cannot obtain for himself a preference over other creditors by paying himself for a preëxisting indebtedness of the corporation. *Albert Richards Co. Inc.* v. *Mayfair, Inc.* 287 Mass. 280, 289. This rule is particularly

applicable here, where the payment or distribution exhausted the assets of the corporation and made impossible its continuance in business. See *Holt* v. *Bennett*, 146 Mass. 437.

Batchelder is obligated to the corporation in an amount equivalent to the value of its assets which as a director he caused to be distributed and as a stockholder received. The defendant Jones also is obligated to account in the same amount, for although receiving nothing as a stockholder, she was a director who presumably assented to the distribution. *Calkins* v. *Wire Hardware Co.* 267 Mass. 52. While the corporation was dissolved as of September 24, 1947, it continues in existence under G. L. (Ter. Ed.) c. 155, § 51, for the purposes of this suit, which was brought against it within three years after its dissolution. Although the primary duty of the individual defendants is to pay to the corporation the value of the assets distributed, in equity the creditors are entitled to this payment to the extent of the corporate indebtedness to them. *Buckley* v. *John*, 314 Mass. 719, 727. As Batchelder has failed to prove that he is a creditor the plaintiffs should receive the entire amount due from the individual defendants which is less than the balance owed by the corporation to the plaintiffs on their judgments.

The final decree dismissing the bill is reversed as against all the defendants except Granite Trust Company and Quincy Trust Company which are not shown to hold moneys of the other defendants. A decree is to be entered establishing the indebtedness of the corporation to the plaintiffs and providing that the individual defendants pay to the plaintiffs the sum of $5,097.95 with interest, prorated according to the respective amounts of their claims. The plaintiffs and the trust companies are entitled to their costs.

*So ordered.*