501 P.2d 722

Shirlee Schivo MOHAR and John Mohar, Plaintiffs-Respondents,

v.

McLELLAND LUMBER COMPANY, Defendant-Appellant.

No. 11004.

Supreme Court of Idaho.

Sept. 25, 1972.

Callis A. Caldwell and L. Charles Johnson, Johnson & Olson, Pocatello, for appellant.

Ben Peterson, Pocatello, for respondents.

McQUADE, Chief Justice.

The parties in this case are competing claimants for approximately $18,600, representing the net proceeds realized from the sale of residential property in Pocatello formerly owned by Floyd M. and Jeanne L. Anderson. Prior to his death on December 7, 1968, Mr. Anderson was a real estate developer whose business misfortunes and terminal affliction with emphysema forced him to rely heavily on the financial aid and managerial assistance of his daughter Shirlee, one of the plaintiffs-respondents. Anderson also became indebted to the defendant-appellant, McLelland Lumber Company, for sums borrowed from the company and for funds advanced by the company to secure other loans which Anderson failed to pay.

On May 29, 1968, Floyd and Jeanne Anderson delivered to their daughter a $20,000 trust deed dated September 30, 1967,[1] creating a first mortgage lien on the property in Pocatello and securing several notes given in return for her contributions to the business. The trust deed was recorded the day of delivery. On June 16, 1969, McLelland Lumber Company obtained a judgment of $42,627.95 against Floyd Anderson, in an action apparently filed on June 11, 1968. Following Mr. Anderson's demise, and the disablement of Mrs. Anderson by an automobile accident and her gradually worsening mental illness, the residence in question was sold. The net proceeds from sale were placed in escrow with American Land Title Company, pending judicial determination of whether the trust deed or the judgment lien represented the superior claim. The daughter and her husband brought this action for a declaration that their claim was superior because the trust deed was filed more than a year prior to the judgment. As an affirmative defense, and in support of its counterclaim, the lumber company alleged that the trust deed constituted a fraudulent conveyance under I.C. §§ 55–901 et seq.[2]

1. The instrument itself was not placed in evidence at trial; rather, its existence was established without objection through a title report, which identified the property in question as Lot 8, Block 3, Morninside Park Addition, Bannock County, Idaho.

2. I.C. § 55–901 provides: "Every instrument, other than a will, affecting an estate in real property, including every charge upon real property, or upon its rents or profits, made with intent to defraud prior or subsequent purchasers thereof, or encumbrancers thereon, is void as against every purchaser or encumbrancer, for value, of the same property, or the rents or profits thereof."

I.C. § 55–902 provides: "No instrument is to be avoided under the last section, in favor of a subsequent purchaser or encumbrancer having notice thereof at the time his purchase was made, or his lien acquired, unless the person in whose favor the instrument was made was privy to the fraud intended."

I.C. § 55–906 provides: "Every transfer of property, or charge thereon made,

After a court trial the claim based on the trust deed was decreed superior, and American Land Title Company was ordered to deliver the net sale proceeds to the daughter and her husband. The lumber company has appealed, directing its assignments of error to the fraudulent conveyance issue.

The law governing conveyances in fraud of creditors has developed from the concept that the debtor's property constitutes a source from which debts should be paid; consequently, the debtor should not be permitted to dispose of the property in a manner violative of the creditors' equitable rights.[3] A fraudulent conveyance is generally characterized by a lack of fair and valuable consideration.[4] A creditor attacking the validity of a transaction on the ground that the property is not available for payment must clearly prove that the underlying consideration is not in reasonable proportion to the value of the conveyance.[5] The consideration may include present advances by the transferees and antecedent debts owed to the transferee by the debtor.[6]

The district court in this case found that the advances and expenditures by the daughter to sustain her father's troubled business constituted full consideration for the trust deed. The record discloses that when the trust deed was executed on September 30, 1967, the daughter held promissory notes bearing interest at rates of 6% and 8% per annum. Specifically, the district court admitted into evidence the following notes:[7]

(a) A note dated January 1, 1959, signed by Floyd M. Anderson and payable to one Frank Schivo (the daughter's former husband), for $3,000, plus $2,000 added by endorsement. This note bore 6% interest until maturity on July 1, 1959, and 8% on the principal thereafter. It was supported by evidence that the $5,000 was deducted from the daughter's share of community property in the property settlement agreement which accompanied a divorce in 1962.

(b) A note dated April 25, 1967, signed by Jeanne L. Anderson on behalf of the business and payable to the daughter, for $7,500 at 8% interest. The note was supported by uncontradicted testimony of the daughter that it covered a number of smaller prior advances.

(c) Two notes dated April 25, 1967, signed by Jeanne L. Anderson and payable to the daughter, each for $1,800 at 8% interest. These notes were supported by two

---

every obligation incurred, and every judicial proceeding taken, with intent to delay or defraud any creditor or other person of his demands, is void against all creditors of the debtor and their successors in interest, and against any person upon whom the estate of the debtor devolves in trust for the benefit of others than the debtor."

I.C. § 55–909 provides: "The provisions of this chapter do not in any manner affect or impair the title of a purchaser for a valuable consideration, unless it appears that such purchaser had previous notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor."

3. *See* Ocklawaha River Farms Co. v. Young, 73 Fla. 159, 74 So. 644 (1917); Knight v. Packer, 12 N.J.Eq. 214 (1859); Candler v. Pettit, 1 Paige (N.Y.) 168 (1828).

4. Lucas v. Coker, 189 Okl. 95, 113 P.2d 589 (1941). *Cf.* Chester B. Brown Co.

v. Goff, 89 Idaho 170, 403 P.2d 855 (1965); Moody v. Beggs, 33 Idaho 535, 196 P. 306 (1921). However, "[no] transfer or charge [can] be adjudged fraudulent *solely* on the ground that it was not made for a valuable consideration." (Emphasis supplied.) I.C. § 55–908.

5. *E. g.*, Osawa v. Onishi, 33 Wash.2d 546, 206 P.2d 498 (1949); Bianco v. Lay, 313 Mass. 444, 48 N.E.2d 36 (1943).

6. Rouse v. Rouse, 174 N.W.2d 660 (Iowa 1970); Ned J. Bowman Co. v. White, 13 Utah 2d 173, 369 P.2d 962 (1962); Liberty Bank & Trust Co. v. Davis, 281 Ky. 51, 134 S.W.2d 988 (1939).

7. The record also contains evidence of advances by the daughter subsequent to the date the trust deed was executed. It is unnecessary in this case to reach the issue of whether such advances should be interpreted as part of the consideration for the trust deed.

checks for the same amount, signed by the daughter, payable to Jeanne Anderson, and dated April 24, 1967.

These notes represented an aggregate debt that was reasonably proportioned to the value of the trust deed when executed, and which exceeds the amount now at issue in this case. By our calculations, the $5,000 note, at interest rates of 6% and 8% accruing only on the principal, represented an obligation of approximately $8,399 on September 30, 1967. The $7,500 note at 8% represented $7,763 on that date, and the $1,800 notes at 8% each, $1,863. Total indebtedness represented by the notes thus appears to have been $19,888. The face amount of the trust deed was $20,000; and the amount of net proceeds from sale of the residential property is approximately $18,600. The district court's finding, that the trust deed was given for adequate consideration, is based on competent evidence and will not be set aside.[8]

Although a conveyance be supported by fair and valuable consideration, it may be set aside with respect to creditors if it is the product of a fraudulent attempt by the debtor and transferee to obstruct access to the debtor's property for satisfaction of legitimate claims.[9] This type of fraudulent conveyance is marked by an actual intent of both the debtor and transferee, to defraud the creditors.[10] Whether a particular transaction was fraudulent is a question of fact to be determined from all the circumstances.[11] Actual fraud must be proven by clear and convincing evidence;[12] but when certain "badges of fraud" attend the conveyance, and are not adequately explained, an inference of actual fraud may be warranted.[13] Among the "badges of fraud" arguably relevant to this case, appellant appears to emphasize the close relationship of the debtor and transferee as father and daughter, the informality of their transactions, the failure to record the trust deed immediately after it was executed, and the precarious state of the debtor's business.

The existence of close relationship between debtor and transferee is not a "badge of fraud" per se.[14] It invites close scrutiny of the conveyance,[15] but it must be supplemented by other proof of bad faith to establish a prima facie case of fraud.[16] The informality of the transactions might signify fraud if it represented a deviation from the ordinary course of dealing; but it does not indicate bad faith where, as in this case, the absence of complete written records appear to result naturally from the close relationship of the

8. *Compare* Buhl State Bank v. Glander, 56 Idaho 543, 56 P.2d 757 (1936), where the evidence revealed consideration so grossly inadequate as to render the conveyance in question fraudulent.

9. I.C. § 55–906, *supra* note 2. *See,* e. g., Krinsky v. Mindick, 100 N.H. 423, 128 A.2d 915 (1957); Kline v. Inland Rubber Corp., 194 Md. 122, 69 A.2d 774 (1949); Joseph P. Manning Co. v. Shinopoulos, 317 Mass. 97, 56 N.E.2d 869 (1944).

10. I.C. § 55–902, *supra* note 2. See Krinsky v. Mindick, *supra* note 9; Essig v. Collier, 159 Wash. 172, 292 P. 414 (1930); Coder v. Arts, 213 U.S. 223, 29 S.Ct. 436, 53 L.Ed. 772 (1908).

11. I.C. § 55–908; Snell v. Prescott, 48 Idaho 783, 285 P. 483 (1930).

12. Chester B. Brown Co. v. Goff, *supra* note 4; *cf.* West v. Prater, 57 Idaho 583, 67 P.2d 273 (1937).

13. Chester B. Brown Co. v. Goff, *supra* note 4; Royal Indemnity Co. v. McClendon, 64 N.M. 46, 323 P.2d 1090 (1958); Evans v. Trude, 193 Or. 648, 240 P.2d 940 (1952); *cf.* Sears v. Lydon, 5 Idaho 358, 49 P. 122 (1897).

14. Louk v. Patten, 58 Idaho 334, 73 P.2d 949 (1937); *see also* Kummet v. Thielen, 210 Minn. 302, 298 N.W. 245 (1941).

15. Hildebrand v. Harrison, 361 P.2d 498 (Okl.1961); Mullens v. Frazer, 134 W. Va. 409, 59 S.E.2d 694, 24 A.L.R.2d 380 (1950); Buhl State Bank v. Glander, *supra* note 8.

16. Texas Sand Co. v. Shield, 381 S.W.2d 48 (Tex.1964); Givan v. Lambeth, 10 Utah 2d 287, 351 P.2d 959 (1960); Shauer v. Alterton, 151 U.S. 607, 14 S.Ct. 442, 38 L.Ed. 286 (1894).

parties.[17] Neither does the time gap between executing and recording the trust deed in this case show a lack of good faith. The instrument was recorded promptly upon delivery to the daughter, and the appellant has not demonstrated that any prejudice to its interests resulted from the delay in delivery.[18] Finally, although the business was in financial difficulty at the time when the trust deed was executed and delivered, the existence of adequate consideration for the conveyance vitiates any inference of fraud.[19]

Without evidence to establish the asserted "badges of fraud," appellant's case is reduced to an attack on Floyd Anderson's preference for his daughter as one of two bona fide creditors. Subject to statutory limitations on transfers during insolvency,[20] not applicable here, an individual debtor may lawfully prefer one bona fide creditor to others.[21] So long as the preference is exercised in good faith, the mere fact that claims of other creditors are hindered or delayed does not indicate fraud, for that is the natural result of the transaction.[22] The district court's finding, that appellant failed to sustain its burden of proving fraud, is supported by the record and must be upheld in this appeal.[23]

The decree and order of the district court are affirmed. Costs to respondents.

DONALDSON, SHEPARD and BAKES, JJ., and MARTIN, District Judge, concur.

17. Lumpkins v. McPhee, 59 N.M. 442, 286 P.2d 299 (1955); *cf.* Schreyer v. Platt, 134 U.S. 405, 10 S.Ct. 579, 33 L.Ed. 955 (1890).

18. *See* W. T. Rawleigh Co. v. Barnette, 253 Ala. 433, 44 So.2d 585, (1950); Crabb v. Morrissey, 31 Neb. 161, 47 N.W. 697 (1891).

19. *E. g.*, Wareheim v. Bayliss, 149 Md. 103, 131 A. 27 (1925); Share v. Trickle, 183 Wis. 1, 197 N.W. 329, 34 A.L.R. 1016 (1924).

20. *See* pertinent provisions of the Bankruptcy Act; *e. g.* 11 U.S.C. §§ 21(a)(2), 96(a)(1) (1964).

21. *E. g.*, Smith v. Whitman, 39 N.J. 397, 189 A.2d 15 (1963); Manello v. Bornstine, 44 Wash.2d 769, 270 P.2d 1059, 45 A.L.R.2d 494 (1954); Burke v. Marlboro Awning Co., 330 Mass. 294, 113 N.E.2d 222 (1953); Bamberger v. Schoolfield, 160 U.S. 149, 16 S.Ct. 225, 40 L.Ed. 374 (1895).

22. Rogers v. Boise Ass'n of Credit Men, Ltd., 33 Idaho 513, 196 P. 213, 23 A.L.R. 195 (1921).

23. I.R.C.P. 52(a).