In re DBSI, INC., et al., Debtors.

James R. Zazzali, as Trustee for the Debtors' Jointly–Administered Chapter 11 Estates and/or as Litigation Trustee for the DBSI Estate Litigation Trust, Plaintiff,

v.

1031 Exchange Group LLC, et al., Defendants.

Bankruptcy No. 08–12687(PJW).

Adversary No. 10–54648(PJW).

United States Bankruptcy Court, D. Delaware.

Aug. 1, 2012.

Jami Nimeroff, Brown Stone Nimeroff, LLC, Attorneys at Law, Wilmington, DE, Monte Neil Stewart, Craig C. Taylor, Belnap Stewart Taylor & Morris, PLLC, Boise, ID, for Certain Defendants Listed on Exhibit A.

Natasha M. Songonuga, Christopher Viceconte, Gibbons P.C., Wilmington, DE, Dale E. Barney, Mark B. Conlan, Gibbons P.C., Newark, NJ, for James R. Zazzali, Litigation Trustee for the DBSI Estate Litigation Trust.

John D. Demmy, Maria Aprile Sawczuk, Stevens & Lee, P.C., Wilmington, DE, for Certain Defendants Listed on Exhibit A and Defendants PMZ Real Estate and Carter Commercial Group, Inc.

Garvan F. McDaniel, Bifferato Gentilotti LLC, Wilmington, DE, Anne R. Myers, Kaufman Dolowich Voluck & Gonzo LLP, Blue Bell, PA, for Certain Defendants Listed on Exhibit A.

James S. Yoder, White and Williams LLP, Wilmington, DE, for Defendant Prudential Dunn Realtors and Montoya Development LC.

Stephen W. Spence, Stephen A. Spence, Phillips, Goldman & Spence, P.A., Wilmington, DE, Steven J. Mitnick, Mitnick & Malzberg, P.C., Frenchtown, NJ, Co–Counsel and Conflicts Counsel to James R. Zazzali, Litigation Trustee for the DBSI Estate Litigation Trust.

## MEMORANDUM OPINION

PETER J. WALSH, Bankruptcy Judge.

This opinion is with regard to the motion to dismiss or for deconsolidation (the "Motion") filed by certain defendants (the "Movants")[1] in this adversary action.[2] (Doc. # 144.) For the reasons described below, I will deny the Motion in part and grant it in part.

### Background

This adversary proceeding arose from the bankruptcy cases of DBSI, Inc. ("DBSI") and a number of its affiliates (collectively, "Debtors"), filed on or about November 10, 2008. FOR 1031 LLC ("FOR 1031"), a DBSI affiliate, filed on November 10, 2008. The history of the DBSI bankruptcy cases has been extensively chronicled in prior decisions from this Court[3], so only a brief summary of the facts relating to this adversary will be provided here.

This action was commenced by James R. Zazzali, Litigation Trustee for the DBSI Estate Litigation Trust ("Trustee") on November 5, 2010. (Doc. # 1.) Trustee subsequently filed an amended complaint on

---

1. Movants are listed by name on Exhibit A (as amended) to the Motion. (Doc. # 529.)

2. Several additional parties filed joinders to the Motion. (Docs. ## 168, 180.)

3. *See, e.g., Zazzali v. 1031 Exchange Grp., LLC,* 467 B.R. 767, 769–70 (Bankr.D.Del.2012).

November 10, 2010 (the "Amended Complaint"). (Doc. #3.) In the Amended Complaint, Trustee asserts causes of action for the avoidance and recovery of fraudulent transfers under sections 544, 548, 550, and 551 of the Bankruptcy Code and Idaho state law; declaratory judgment related to the Securities Act of 1933 (the "'33 Act") and the Securities Exchange Act of 1934 (the "'34 Act"); unjust enrichment; rescission; and disallowance of claims pursuant to section 502 of the Bankruptcy Code. Exhibit A to the Amended Complaint lists the name and city/state/zip code of each defendant, including Movants. Exhibit B lists several hundred transfers (the "Transfers") from FOR 1031 and other DBSI entities to Movants and other defendants. For each Transfer, Trustee lists the amount, date, and number of each check or transaction, and the names of the transferee/defendant and the transferor.

Movants are seeking to dismiss the Amended Complaint in its entirety for failure to state a claim, pursuant to Fed. R.Civ.P. 12(b)(6)[4]. In the alternative, Movants request deconsolidation due to improper joinder of defendants under Fed. R.Civ.P. 20(a)(2)[5]. After briefing from Movants and Trustee (Docs. ## 145, 243, 259), this matter is ripe for decision.

## Jurisdiction

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding involves both core matters under § 157(b)(2)(B), (F), (H), (O) and non-core matters.[6]

## Discussion

The Motion raises two main issues: 1) whether the Amended Complaint alleges sufficient facts to state claims for relief against Movants; and 2) whether Movants have been improperly joined. Because I need not reach the joinder issue if I determine that the Amended Complaint should be dismissed, I will first consider the Rule 12(b)(6) dismissal issue and then turn to the joinder issue.

## I. Dismissal under Rule 12(b)(6)

In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Under the pleading requirements imposed by Fed. R.Civ.P. 8(a)[7], the plaintiff must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. Rather, "fac-

---

**4.** Fed.R.Civ.P. 12 is made applicable to this adversary proceeding by Fed. R. Bankr.P. 7012.

**5.** Fed.R.Civ.P. 20 is made applicable to adversary actions by Fed. R. Bankr.P. 7020.

**6.** In the event that this Court or the District Court later determines that the entry of a final order or judgment in this case would not be consistent with Article III of the U.S. Constitution, this opinion will constitute this Court's proposed findings of fact and conclusions of law. *See* U.S. District Court for the District of Delaware, Am. Standing Order of Refer-

ence, Feb. 29, 2012, *available at http://www. deb.uscourts.gov/. See also* Fed. R. Bankr.P. 7052.

**7.** Rule 8(a) provides that a complaint "must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief."

tual allegations must be enough to raise a right to relief above the speculative level." *Id. See also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir.2009) ("To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible. This then 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' ") (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937). The court will "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir.2008).

### A. Count One—Avoidance and Recovery of Actual Fraudulent Transfers under 11 U.S.C. §§ 548(a)(1)(A), 550(a), and 551

█ Actions to avoid actually fraudulent transfers under § 548(a)(1)(A) are subject to the Fed.R.Civ.P. 9(b) heightened standard of pleading. *Official Comm. of Unsecured Creditors of Fedders N. Am. v. Goldman Sachs Credit Partners (In re Fedders N. Am., Inc.)*, 405 B.R. 527, 544 (Bankr.D.Del.2009). Rule 9(b) requires that a plaintiff bringing a cause of action for fraud "state with particularity the circumstances constituting fraud or mistake." This standard is relaxed where the plaintiff is a trustee, because "of the trustee's 'inevitable lack of knowledge concerning acts of fraud previously committed against the debtor, a third party.' " *Id.* (citing *Schwartz v. Kursman (In re Harry Levin, Inc. t/a Levin's Furniture)*, 175 B.R. 560, 567 (Bankr.E.D.Pa.1994)). Nonetheless, even under the more relaxed Rule 8(a) standard, the plaintiff must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Mervyn's LLC v.*

*Lubert–Adler Grp. IV (In re Mervyn's Holdings, Inc.)*, 426 B.R. 488, 494 (Bankr. D.Del.2010) (quoting *Twombly*, 127 S.Ct. at 1964–65).

█ Section 548(a)(1)(A) provides that a trustee may avoid a transfer "made with actual intent to hinder, delay or defraud" creditors, provided that the transfer was made within two years before the petition date. Because of the difficulty in proving actual fraudulent intent, the court can infer the necessary intent from the circumstances of the case, particularly the presence or absence of "badges of fraud." *Fedders*, 405 B.R. at 545. The traditional badges of fraud include (but are not limited to): "(1) the relationship between the debtor and the transferee; (2) consideration for the conveyance; (3) insolvency or indebtedness of the debtors; (4) how much of the debtor's estate was transferred; (5) reservation of benefits, control or dominion by the debtor over the property transferred; and (6) secrecy or concealment of the transaction." *Id.* No single badge of fraud is dispositive, and the court may consider other factors. *Id.*

█ Trustee pleads that the collective DBSI enterprise was insolvent at the time of the Transfers. Specifically, Trustee makes the following allegations:

- "Marketing, transactional and organizational costs in the TIC syndication business prevented [DBSI] from generating sufficient profit to support the DBSI enterprise. At some point in or after 2004, the DBSI enterprise took on the characteristics of a Ponzi scheme, in which the guaranteed returns to the old investors could only be satisfied by the flow of funds from the new investors." (Am. Compl. ¶ 27.)

- "During the four-year period preceding the Petition Date (the "Four Year Period"), the Debtors were facing se-

vere cash shortages and were largely dependent on new investor money to provide cash for operations and to fund payments to prior investors." (*Id.* ¶ 28.)

- DBSI commingled funds among the various entities and routinely transferred cash from one entity to another without regard for the original source of the funds. (*Id.* ¶¶ 29–31.)
- "By late 2006, cash shortages were such an acute problem that management was consumed by the machinations of managing and obtaining cash. From early 2005, management met frequently to address cash-flow needs." (*Id.* ¶ 49.)
- "[D]espite massive flows of cash in and out of [the DBSI enterprise's] accounts, a snapshot on any given day would show either a very meager cash balance or a collective deficit." (*Id.* ¶ 50.)

This Court has previously found that, because the DBSI cases have been substantively consolidated, Trustee need not allege that the particular transferor entity (here, FOR 1031) was insolvent. *Zazzali v. Mott (In re DBSI, Inc.),* 447 B.R. 243, 248 (Bankr.D.Del.2011). As a result, the allegations regarding the insolvency of the DBSI enterprise as a whole are sufficient. From Trustee's assertions listed above, it is plausible that Debtors, including FOR 1031, were unable to pay their debts as they came due.

Insolvency is the only traditional badge of fraud that Trustee includes in his pleading. But the list of badges of fraud is not exclusive, and so the Court may consider other factors. Here, Trustee raises a number of allegations regarding FOR 1031's financial condition and its attempts to obscure the true status of its balance sheet. In particular, Trustee alleges that Debtors, including FOR 1031, had the ac-

tual intent to defraud because they were engaged in a Ponzi scheme.

Trustee alleges that the DBSI enterprise as a whole "took on the characteristics of a Ponzi scheme" around 2004. (Am. Compl. ¶ 27.) The scheme was propped up by the sale of tenant-in-common ("TIC") interests through both a securities channel and a real estate channel. (*Id.* ¶ 16.) Beginning in 2003, the TIC interests were sold and marketed through FOR 1031, which sold the interests to the public as real estate via licensed real estate brokers and agents. (*Id.* ¶ 19.) The brokers and agents received a commission for their services. (*Id.*) These TIC sales, along with the sale of note, bond, and fund investments, generated the cash flow necessary to keep up the illusion of high returns:

> By generating a continuing influx of cash from new investors through serial bond, note and fund offerings and sales of TIC investments in TIC Properties, the Debtors were able to create and promote the false impression of financial strength and make consistent payments to investors, notwithstanding that the Debtors' [sic] were insolvent at the time.

(*Id.* ¶ 27.) Additionally, the TIC interests were frequently sold at a mark-up, even though "no value had been added to justify the mark-up." (*Id.* ¶ 32.) Despite the fact that the properties sold to TIC investors were "generally old, small, and located in tertiary markets" and "were populated with high-credit-risk tenants" with high turnover, DBSI promised investors a 6 or 7 percent yield on their investments and 2 to 3 percent annual growth over a 20–year period. (*Id.* ¶ 56.)

The financial burdens associated with the scheme were ultimately borne by DBSI, as DBSI guaranteed both the mortgage loans incurred by FOR 1031 and its special purpose entities (SPEs) and the obligation to pay the rental stream to the

TIC investors. (*Id.* ¶ 54.) This structure, in which DBSI incurred all of the liabilities and obligations in the scheme while FOR 1031 received all of the profits from the TIC interest sales, allowed Debtors to "portray FOR 1031 on papers as an immensely profitable company." (*Id.* ¶ 66.) Moreover, the scheme trapped DBSI in insolvency, as "[f]or every dollar of gross profit received through the sale of TIC interests, DBSI assumed, through its guaranties of the master lease obligations, [liabilities] that far exceeded the front-end gross profits." (*Id.* ¶ 70.) While DBSI was paid a fee for its services as master lessee of the TIC properties and guarantor, the fee was "woefully inadequate in relation to the scope of the liabilities being transferred." (*Id.* ¶ 61; *see also id.* ¶¶ 62–64)

■ Trustee argues that the foregoing allegations establish that FOR 1031 was an integral part of a widespread Ponzi scheme, and that as a result, the Transfers were made with actual intent to defraud. To reach this conclusion, Trustee relies on the "Ponzi presumption," which posits that "all payments made by a debtor in furtherance of a Ponzi scheme are made with actual fraudulent intent." *Cuthill v. Greenmark, LLC (In re World Vision Entm't, Inc.)*, 275 B.R. 641, 658 (Bankr. M.D.Fla.2002). This Court has previously recognized the presumption as applied to a fraudulent conveyance action brought against one of the DBSI insiders. *Zazzali v. Swenson (In re DBSI, Inc.)*, Adv. No. 10–54649(PJW), 2011 WL 1810632, at *4 (Bankr.D.Del. May 5, 2011).

■ Yet several courts have held that, even with the presumption available, the plaintiff must still show that the transfer at issue was made "in furtherance of" the Ponzi scheme. *See, e.g., Bear, Stearns Secs. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 11 (S.D.N.Y.

2007) (noting that the court must determine "whether the transfers at issue were related to a Ponzi scheme" before it can apply the Ponzi presumption); *In re Pearlman*, 440 B.R. 569, 575 (Bankr. M.D.Fla.2010) ("To rely on the Ponzi scheme presumption, the trustee must allege the debtors' loan repayments were somehow in furtherance of either the EISA Program or the TCTS Stock Program Ponzi schemes."). This is because even where the plaintiff has alleged the existence of a broad, fraudulent scheme, "the [c]ourt must focus precisely on the specific transaction or transfer sought to be avoided in order to determine whether that transaction falls within the statutory parameters of [an actually fraudulent transfer]." *In re Bayou Grp., LLC*, 362 B.R. 624, 638 (Bankr.S.D.N.Y.2007). *See also Manhattan Inv. Fund*, 397 B.R. at 11 (noting that "[c]ertain transfers may be so unrelated to a Ponzi scheme that the presumption should not apply"). In sum, the plaintiff must plead that the debtor was engaged in a Ponzi scheme and that the transfers at issue were related to or in furtherance of the fraudulent scheme.

■ Trustee has sufficiently pled the existence of a Ponzi scheme. A Ponzi scheme exists where "money from new investors is used to pay artificially high returns to earlier investors in order to create an appearance of profitability and attract new investors so as to perpetuate the scheme." *Manhattan Inv. Fund*, 397 B.R. at 8. Trustee alleges that "[a]t some point in or after 2004, the DBSI enterprise took on the characteristics of a Ponzi scheme, in which the guaranteed returns to the old investors could only be satisfied by the flow of funds from the new investors." (Am. Compl. ¶ 27.) More specifically, Trustee alleges that the sale of TIC interests (as well as notes and bonds) were "the only operations of DBSI that generat-

ed positive cash flow." (*Id.*) That cash came from the sale of TIC interests to investors who were lured by a guaranteed high-yield stream of rental income, a yield that was not supported by the investment quality of the TIC property given its high-risk tenancy. The promised returns derived not from the value of the investments but rather from the manipulation of FOR 1031's financial statements due to DBSI's assumption of all risk and liability associated with the scheme. While Trustee will of course have to prove with actual evidence the existence of a Ponzi scheme, these allegations are sufficient at the motion to dismiss stage.

■ The question of whether the Transfers were made in furtherance of the Ponzi scheme is a trickier question. Yet, taking the allegations in the Complaint and its exhibits as a whole, I conclude that Trustee has alleged that the Transfers were part of the fraudulent scheme. Trustee alleges that the TIC interests were sold through a real estate channel starting in 2003. Those real estate interests were sold by FOR 1031, who used a network of licensed real estate brokers and/or agents to sell the interests to investors. Trustee further alleges that the real estate brokers/agents selling TIC interests received a commission or referral fee from FOR 1031 for their sales efforts. (Am. Compl. ¶ 19.) Such commissions and referral fees in this context would be made in furtherance of the DBSI Ponzi scheme, as the scheme was dependant upon the brokers/agents' sale of TIC interests to generate cash flow. *See World Vision Ent'mt,* 275 B.R. at 657 (holding that commission payments to brokers who sold promissory notes were fraudulent transfers where the note sales were the primary source of funds supporting the debtor's Ponzi scheme). Consequently, the Ponzi presumption is applicable here to show fraud-

ulent intent, and Trustee has adequately stated a claim for the avoidance of actual fraudulent transfers under § 548(a)(1)(A).

**B.** *Count Two—Avoidance and Recovery Constructively Fraudulent Transfers under 11 U.S.C. §§ 548(a)(1)(B), 550(a), and 551*

■ Section 548(a)(1)(B) empowers the trustee to avoid any transfer of an interest in debtor's property made within two years of the petition date if the debtor received less than reasonably equivalent value and was insolvent or undercapitalized at the time of or as a result of the transfer. *See* 11 U.S.C. § 548(a)(1)(B)(i)-(ii)(IV). Because the trustee does not have to plead specific fraudulent intent, courts have held that the Rule 9(b) heightened pleading standard does not apply. *In re Global Link Telecom Corp.,* 327 B.R. 711, 718 (Bankr.D.Del.2005). Yet even under the Rule 8 relaxed standard, the trustee must do more than allege only the statutory elements. Rather, the trustee must allege specific facts showing the debtor's financial position and the value of what was received in exchange for the transfer. *See id.*

As noted above in the discussion of the § 548(a)(1)(B) claim, Trustee has sufficiently pled the insolvency of both DBSI as a whole and of FOR 1031 individually. The more difficult issue is whether Trustee has alleged that Debtors did not receive reasonably equivalent value for the Transfers.

■ Trustee alleges that Movants received commissions and referral fees from their sales of TIC interests. (Am. Compl. ¶ 19.) In his opposition to the Motion, Trustee argues that the Transfers "could never be for reasonably equivalent value as the only things provided to the Debtors by each sale was additional unsustainable debt." (Doc. # 243, at 20.) There is, how-

ever, a split in authority as to whether a transfer that deepens the debtor's overall insolvency is *per se* a transaction without fair consideration. *Compare Balaber–Strauss v. Sixty–Five Brokers (In re Churchill Mortg. Inv. Corp.)*, 256 B.R. 664, 680 (Bankr.S.D.N.Y.2000) (holding that commission payments to a broker who had no knowledge of the debtor's Ponzi scheme were not constructively fraudulent because the debtor received the broker's services in return), *and Solow v. Reinhardt (In re First Commercial Mgmt. Grp. Inc.)*, 279 B.R. 230, 237–39 (Bankr.N.D.Ill.2002) (concluding that the court must "analyze whether reasonably equivalent value exists by focusing on the consideration exchanged between the debtor and the defendant"), *with Martino v. Edison Worldwide Capital (In re Randy)*, 189 B.R. 425, 441 (Bankr.N.D.Ill.1995) (holding that broker commissions were fraudulent transfers because "the contract that underlies the transaction is illegal, and therefore no value could have been given by the transferee to the debtor for the transfer"). The application of one line of cases or the other is fact intensive, and thus is not appropriate for disposal at this stage.

Here, Trustee alleges that Movants received the Transfers as commissions and referral fees for the sale of TIC interests. On one side of the transaction, FOR 1031 transferred cash to Movants. In return, Movants performed services to benefit FOR 1031, i.e. sold TIC interests to investors. These sales generated cash for Debtors. But, because the underlying assets were insufficient to generate the guaranteed returns on the TIC investments,

each sale also increased Debtors' obligations and thus their insolvency. Under the *In re Randy* analysis, there was no reasonably equivalent value received by Debtors from the sale. Under the *Churchill* reasoning, Movants' services could constitute fair consideration provided that Movants were not aware of the fraudulent scheme and did not otherwise act illegally. Movants' awareness of the Ponzi scheme and whether their actions were illegal are questions to be answered at a later stage of the proceeding once the record has been developed. As a result, I cannot say that Trustee's pleading is insufficient on the issue of reasonably equivalent value, and so I will not dismiss his claim for constructive fraud under § 548(a)(1)(B).

C. *Count Three—Avoidance and Recovery of Actual Fraudulent Transfers under Idaho Code Ann.*[8] *§§ 55–913(1)(a), 55–916, and 55–917, and 11 U.S.C. §§ 544(b), 550, and 551*

Section 544(b) of the Bankruptcy Code permits the trustee to step into the shoes of an existing unsecured creditor who could have avoided an action under state law. 11 U.S.C. § 544(b)(1). Trustee here asserts claims against Movants under several Idaho Code sections.

Idaho Code § 55–913(1)(a) provides that a transfer is fraudulent if it is made with the "actual intent to hinder, delay, or defraud any creditor of the debtor." In determining actual intent, the court may consider whether:

---

**8.** There is a dispute between the parties as to whether Idaho law applies to this action. Trustee pleads four causes of action under Idaho law. Movants respond that Trustee has not alleged sufficient facts to justify the application of Idaho law. Choice of law issues are often complicated and involved mixed questions of law and fact. As a result, I decline to resolve this issue at this stage in this proceeding before the record has been developed. Without deciding whether Idaho law should apply here, I will evaluate Trustee's Idaho law claims and decide whether he has effectively stated a claim for relief under Idaho law.

(a) The transfer or obligation was to an insider;

(b) The debtor retained possession or control of the property transferred after the transfer;

(c) The transfer or obligation was disclosed or concealed;

(d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(e) The transfer was of substantially all the debtor's assets;

(f) The debtor [absconded];

(g) The debtor removed or concealed assets;

(h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(j) The transfer occurred shortly before or shortly after a substantial debt was incurred; and

(k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Idaho Code Ann. § 55–913(2). Sections 55–916 and 55–917 provide for the avoidance and recovery, respectively, of such a fraudulent transfer by a creditor.

■ Of the badges of fraud listed in § 55–913(2), Trustee has only pled insolvency and lack of reasonably equivalent value. This list, like the list in § 548(a)(1)(A) of the Bankruptcy Code, is non-exclusive, and thus other factors may be taken into account. Courts in the Ninth Circuit have recognized the Ponzi presumption and applied it to state uniform fraudulent transfer laws like Idaho's. *See, e.g., In re Slatkin,* 525 F.3d 805, 814

(9th Cir.2008). Therefore, for the same reasons as stated above in my analysis of the § 548(a)(1)(A) count, I find that Trustee has sufficiently pled a claim for the avoidance of actual fraudulent transfers.

D. *Count Four—Avoidance and Recovery of Constructively Fraudulent Transfers under Idaho Code Ann. §§ 55–913(1)(b), 55–916, and 55–917, and 11 U.S.C. §§ 544(b), 550, and 551*

■ To show a transfer is fraudulent under Idaho Code Ann. § 55–913(1)(b), a plaintiff must plead: "(1) the debtor had an interest in property; (2) a transfer of that interest occurred within the period prescribed; (3) the debtor received less than reasonably equivalent value in exchange for such transfer; and (4) the debtor was insolvent at the time of the transfer." *L.D. Fitzgerald v. Magic Valley Evangelical Free Church, Inc. (In re Hodge),* 200 B.R. 884, 892 (Bankr.D.Idaho 1996), *rev'd on other grounds,* 220 B.R. 386 (D.Idaho 1998). This is roughly the same analysis as required under § 548(a)(1)(B). As I have found that Trustee's pleading of the § 548(a)(1)(B) count is sufficient, I hold that Trustee has adequately pled this count as well.

E. *Count Five—Avoidance and Recovery of Constructively Fraudulent Transfers under Idaho Code Ann. §§ 55–914(1), 55–916, and 55–917, and 11 U.S.C. §§ 544(b), 550, and 551*

■ To maintain an action under § 55–914(1), a plaintiff must plead that (i) there was a transfer; (ii) the creditor's claim arose before the transfer; (iii) the debtor did not receive reasonably equivalent value in return; and (iv) the debtor was insolvent at the time of the transfer. Idaho Code Ann. § 55–914(1). *See also Post v.*

*Idaho Farmway, Inc.*, 135 Idaho 475, 20 P.3d 11, 13 (2001).

■ As discussed in relation to the claims for constructive and actual fraudulent transfer, Trustee has pled the existence of the Transfers, insolvency, and lack of reasonably equivalent value. As for the existence of a pre-existing creditor, this Court has previously held that at the motion to dismiss stage, "courts do not generally require a trustee to plead the existence of an unsecured creditor by name, although the trustee must ultimately prove such a creditor exists." *Indus. Enter. of Am. v. Tabor Acad. (In re Pitt Penn Holding Co., Inc.)*, 2011 WL 4352373, at *12 (Bankr.D.Del. Sept. 16, 2011) (quoting *Pardo v. Avanti Corporate Health Sys. (In re APF Co.)*, 274 B.R. 634, 639 (Bankr. D.Del.2001)). Therefore, this claim will survive the Motion and will not be dismissed.

### F. Count Six—Transfers in Fraud of Creditors under Idaho Code Ann. §§ 55–906, and 11 U.S.C. §§ 544(b), 550, and 551

■ Idaho Code § 55–906 provides that "[e]very transfer of property ... [made] with intent to delay or defraud any creditor ... is void against all creditors of the debtor ... and against any person upon whom the estate of the debtor devolves in trust for the benefit of others than the debtor." As is the case with § 55–913(1)(a), the plaintiff must show actual intent to defraud with respect to the transfer at issue, and may do so using badges of fraud. *See Mohar v. McLelland Lumber Co.*, 95 Idaho 38, 501 P.2d 722, 726 (1972).

■ For the reasons described above in my analysis of the actual fraud claims, I hold that Trustee has adequately pled actual intent to defraud. Accordingly, this count will not be dismissed.

### G. Count Seven—Declaratory Judgment

In Count Seven, Trustee seeks a declaratory judgment that the agreements between Movants and Debtors for commissions and referral fees were void because the TIC sales violated federal securities laws. Specifically, Trustee seeks a determination that 1) the TIC interests were securities, as defined by the '33 Act and the '34 Act; 2) Movants were not licensed to sell securities; 3) the sale of the TIC interests as real estate violated the securities acts; and 4) the agreements between Debtors and Movants for referral fees and commissions were void because the TIC sales were illegal. (Am. Compl. ¶ 125.)

Movants argue in their briefing that section 12 of the '33 Act [9] does not provide a

9. Section 12 provides:

Any person who (1) offers or sells a security in violation of section 77e of this title, or (2) offers or sells a security (whether or not exempted by the provisions of section 77c of this title, other than paragraphs (2) and (14) of subsection (a) of said section), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable, subject to subsection (b) of this section, to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon,

private right of action for a non-purchaser. That may be true, but Trustee is not seeking to enforce a right under section 12. Trustee is seeking a declaration that the sale of TIC interests by brokers/agents who were not licensed securities dealers was unlawful and thus that the brokers/agents' commission contracts were illegal; he is not seeking the rescission of a security sale. Further, he is not looking to recover the price of the TIC interests or any money damages related to the price of the TIC interests. In other words, the remedy that Trustee is seeking here is not damages or restitution for the sale, but rather the return of the commission payments FOR 1031 made to Movants pursuant to an illegal contract for the sale of securities. Movants' argument on this point is misguided.

It is Trustee's position that the TIC interests were securities as defined by federal securities laws, and that the brokers/agents' sale of the TIC interests was thus illegal. This is a legal conclusion, however, and cannot be taken as true for 12(b)(6) analysis. Rather, Trustee must offer factual allegations that, if taken as true, would permit the inference that the sale was illegal.

■■■ The threshold issue in any securities cause of action is whether the instrument at issue is, in fact, a security. Section 2(a)(1) of the '33 Act and section 3(a)(10) of the '34 Act broadly define "security" to include any "investment contract," which is itself not defined by either act. *S.E.C. v. Edwards*, 540 U.S. 389, 393, 124 S.Ct. 892, 157 L.Ed.2d 813 (2004). The test for whether an instrument is an investment contract is "whether the

scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others." *Id.* (citing *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946)).

Here, Trustee has alleged that investors purchased the TIC interests in commercial properties for a combination of cash and the assumption of pre-existing debt. (Am. Compl. ¶ 51.) The investors were guaranteed a 20–year return on investment of upwards of 7 percent. (*Id.* ¶ 53.) The properties were managed by a DBSI master lessee, who sublet the property, collected rents, and handled the expenses related to capital expenses and improvements. (*Id.* ¶ 52.) Trustee's allegations describe a passive investment scheme that could meet the definition of an investment contract and thus a security. *See United Hous. Found., Inc. v. Forman*, 421 U.S. 837, 852, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975) ("The touchastone [sic] is the presence of an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others."); *Lino v. City Investing Co.*, 487 F.2d 689, 691–92 (3d Cir.1973) (citing *Howey*, 328 U.S. at 298–99, 66 S.Ct. 1100).

Trustee asks this Court to declare that the TIC sales violated the federal securities laws and that the commission contracts were thus illegal. Trustee does not specify which provisions of the '33 Act and '34 Act he is relying upon. He does, however, allege that the SEC told Debtors that it intended to recommend that a cease and desist proceeding be commenced against FOR 1031 for violation of sections 5(a) and 5(c) [10] of the '33 Act. (Am. Compl.

---

upon the tender of such security, or for damages if he no longer owns the security. 15 U.S.C. § 77l (2000).

**10.** Section 5 of the '33 Act reads, in relevant part, as follows:

(a) Sale or delivery after sale of unregistered securities Unless a registration statement is in effect as to a security, it shall be

¶ 22.) Further, Trustee alleges that the National Association of Realtors sought but never received an exemption under sections 15 [11] and 36 [12] of the '34 Act from the SEC. (*Id.* ¶ 25.) Thus, construing the Amended Complaint in Trustee's favor, I conclude that Trustee is seeking declaratory relief under sections 5(a) and 5(c) of the '33 Act and sections 15 and 36 of the '34 Act.

■■■ To plead a violation of section 5 of the '33 Act, "a plaintiff need allege only the sale or offer to sell securities, the absence of a registration statement covering the securities, and the use of the mails or facilities of interstate commerce in connection with the sale or offer." *Raiford v. Buslease, Inc.*, 825 F.2d 351, 354 (11th Cir.1987) (citing *Swenson v. Engelstad,* 626 F.2d 421, 424–25 (5th Cir.1980)). *See also* 15 U.S.C. § 77e. Trustee here has failed to allege the use of the mails or any

other instrumentality of interstate commerce. Further, Trustee does not explicitly state that the TIC interests at issue were not registered.

■■■ Regarding the broker/dealer licensing requirement, section 15 of the '34 Act also requires a showing that the broker used the mail or some other instrumentality of interstate commerce to effect the sale. 15 U.S.C. § 78*o*(a)(1). As noted above, Trustee has made no allegations about the use of instrumentalities of interstate commerce. Also, Trustee has not alleged that Movants are not registered securities broker/dealers. Trustee simply alleges that Movants were "licensed by state regulatory commissions or agencies as real estate brokers and/or agents" but says nothing about their lack of section 15 registration. (Am. Compl. ¶ 19.)

Because Trustee has failed to allege two key elements in his declaratory judgment

---

unlawful for any person, directly or indirectly—
>(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or
>(2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale.
>. . .
>(c) Necessity of filing registration statement It shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under section 77h of this title.
15 U.S.C. § 77e.

11. Section 15(a) provides that
>[i]t shall be unlawful for any broker or dealer which is either a person other than a natural person or a natural person not associated with a broker or dealer which is a person other than a natural person (other than such a broker or dealer whose business is exclusively intrastate and who does not make use of any facility of a national securities exchange) to make use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security (other than an exempted security or commercial paper, bankers' acceptances, or commercial bills) unless such broker or dealer is registered in accordance with subsection (b) of this section.
15 U.S.C. § 78*o*(a)(1). Section 15(a)(2) permits the SEC to exempt certain broker/dealers from section 15(a)(1). Section 15(b) outlines the broker/dealer registration process.

12. Section 36 of the '34 Act gives the SEC the power to exempt persons, securities, and transactions from the '34 Act and the applicable rules. 15 U.S.C. § 78mm.

claim, I will dismiss this count with leave to amend.

### H. Count Eight—Unjust Enrichment

 Trustee next seeks restitution under an unjust enrichment theory. To succeed on an unjust enrichment claim, a plaintiff must show: "(1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance of the benefit under circumstances that would be inequitable for the defendant to retain the benefit without payment to the plaintiff of the value thereof." *Indep. Sch. Dist. of Boise City v. Harris Family Ltd. P'ship,* 150 Idaho 583, 249 P.3d 382, 388 (2011) (citations and internal quotation marks omitted). "Inequity exists if a transaction is inherently unfair." *Id. See also Schock v. Nash,* 732 A.2d 217, 232 (Del.1999) ("Unjust enrichment is defined as the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience. To obtain restitution, the plaintiffs were required to show that the defendants were unjustly enriched, that the defendants secured a benefit, and that it would be unconscionable to allow them to retain that benefit.") (citations and internal quotation marks omitted).

 Trustee alleges that Movants were "enriched as a result of receiving [the Transfers] by receiving something of value that belonged to Plaintiff" and that this enrichment "violate[s] equity and good conscience." (Am. Compl. ¶¶ 128, 129.) Trustee further alleges that "these enrichments did not result from enforceable agreements between Plaintiff and Defendants." (*Id.* ¶ 130.) This comports with Trustee's view that the commission/referral fee contracts were illegal. Yet as discussed above, Trustee has not pled suffi-

cient facts to support a declaration that the contracts were illegal under the securities laws. The only other way that the Transfers would be inequitable is if they were fraudulent, and Trustee has adequately alleged the fraudulent nature of the Transfers. This claim is somewhat duplicative in light of the claims for the avoidance of fraudulent transfers, but at this stage, Trustee has pled sufficient facts to support his unjust enrichment cause of action.

### I. Count Nine—Rescission

Count Nine seeks the rescission of the commission/referral fee agreements and disgorgement of any funds received pursuant to those agreements. This theory is premised upon Trustee's securities law declaratory judgment claim, because Trustee asserts that the agreements were "based upon the unlicensed sale of securities" and thus were void. (Am. Compl. ¶ 134.)

Since I have determined that the declaratory judgment claim was deficient, I will dismiss this count with leave to amend.

### J. Count Ten—Disallowance of All Claims Pursuant to 11 U.S.C. § 502

 Under § 502(d) of the Bankruptcy Code

the court shall disallow any claim of any entity ... from which property is recoverable under section ... 550 ... or that is a transferee of a transfer avoidable under section ... 544, 547, 548, 549, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable.

11 U.S.C. § 502(d).

This Court has previously held that a claim under § 502(d) is premature where the trustee does not yet have a judgment against the transferee. *See DHP Hold-*

*ings II Corp v. Peter Skop Indus. Inc. (In re DHP Holdings II Corp.)*, 435 B.R. 220, 226 (Bankr.D.Del.2010). Here, Trustee has not obtained a judgment on his avoidance claims. Further, he has not even alleged that Defendants filed any proofs of claim. Thus, this count will be dismissed.

## II. Improper Joinder under Rule 20

In addition to challenging the sufficiency of Trustee's factual allegations, Movants argue that Trustee has improperly joined "hundreds" of defendants in this action because Trustee cannot satisfy the two-part test in Fed.R.Civ.P. 20(a)(2) permitting joinder of defendants. Movants seek dismissal of this action or, in the event that Trustee be given leave to amend, a requirement that Trustee file separate amended complaints as to each individual defendant.

Rule 20(a)(2) provides that a plaintiff may join two or more defendants in the same action if two conditions are met. First, "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R.Civ.P. 20(a)(2)(A). Second, "any question of law or fact common to all defendants will arise in the action." Fed. R.Civ.P. 20(a)(2)(B). Movants argue that Trustee has failed to meet either of these conditions. Movants assert that the defendants were involved in different TIC projects in different states at different times, and that while there may be common legal issues, "there is no alleged factual overlap." (Doc. # 145, at 13–14.)

As to the first requirement, several courts have held that Rule 20(a)(2)(A) is satisfied where the plaintiff has alleged a widespread scheme of wrongdoing. *See, e.g., King v. Pepsi Cola Metro. Bottling Co.*, 86 F.R.D. 4, 5–6 (E.D.Pa.1979) ("the allegations of a pervasive policy of [racial] discrimination by Pepsi would bring the complaints of the individual plaintiffs under the rubric of the "same series of transactions" "); *Mesa Computer Util., Inc. v. W. Union Computer Util., Inc.*, 67 F.R.D. 634, 637 (D.Del.1975) ("The Court cannot, however, discount the fact that the fraud and antitrust claims respectively allege acts of misrepresentation and conspiracy which directly affected all plaintiffs. It has been held that such conduct may constitute a single transaction or occurrence for purposes of Rule 20(a).") Here, Trustee has alleged that Debtors were engaged in a Ponzi scheme and that the Transfers were made in furtherance of the overall fraudulent scheme. This is sufficient at this point in the proceeding, before the record has been developed, to survive Movants' motion to deconsolidate.

With respect to the second requirement, "Rule 20(a) does not require precise congruence of all factual and legal issues; indeed, joinder may be permissible if there is but one question of law or fact common to the parties." *Mesa*, 67 F.R.D. at 637. Movants apparently concede that there are common issues of law but argue that Trustee has not pled any common facts. I note, however, that both the language of the statute and the language used in *Mesa* is disjunctive; that is, there must be at least one question of law *or* fact, not one of each. Further, Trustee has pled facts alleging that DBSI ran a Ponzi scheme, and it is this scheme that Trustee argues makes the Transfers fraudulent. The facts of the Ponzi scheme are thus alleged to be common to all Movants. The existence of the Ponzi scheme and Debtors' insolvency are issues common to all named defendants, and thus I do not find that joinder was improper.

I will also note that Movants actually benefit from being sued in the same action.

Many of the defendants, including Movants, have already joined forces, thereby reducing the lawyering costs for each of them. Movants and other defendants can continue to collaborate in conducting other pre-trial and trial work.

### Conclusion

For the reasons detailed above, I will grant the Motion with respect to Counts Seven and Nine and deny it as to all other counts and the request to deconsolidate.

### ORDER

For the reasons set forth in the Court's memorandum opinion of this date, the motion of certain defendants to dismiss for failure to properly state claims and/or, alternatively, for deconsolidation due to improper joinder of defendants (Doc. # 144) is **GRANTED** as to the dismissal of Counts Seven and Nine and **DENIED** as to all other counts, provided however that if the Trustee elects to file an amended complaint with respect to Counts Seven and Nine, he shall do so within 30 days of the entry of this order. The request for deconsolidation due to improper joinder of defendants is **DENIED.**